Greg and Mary **HENSON,**
Plaintiffs–Appellants,

v.

**CSC CREDIT SERVICES, Trans Union Corporation, and Cosco Federal Credit Union, Defendants–Appellees.**

No. 93–3441.

United States Court of Appeals,
Seventh Circuit.

Argued March 9, 1994.

Decided July 11, 1994.

Peter C. King, J. Kevin King (argued), Cline, King & King, Columbus, IN, for plaintiffs-appellants.

Philip A. Whistler, Curtis W. McCauley (argued), Ice, Miller, Donadio & Ryan, Indianapolis, IN, for CSC Credit Services, Inc.

Robert J. Schuckit (argued), Martha M.K. Baird, Dann, Pecar, Newman, Talesnick & Kleiman, Indianapolis, IN, for Trans Union Corp.

Jeffrey C. McDermott (argued), M. Kent Newton, James William Stevenot, Krieg, Devault, Alexander & Capehart, Indianapolis, IN, for Cosco Federal Credit Union.

Before PELL, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This case has its origin in an earlier suit filed in an Indiana state court by the Cosco Federal Credit Union against one of the plaintiffs, Greg Henson, and his brother Jeff. In that action, the state court clerk erroneously noted in the Judgment Docket that a money judgment had been entered against Greg. Two credit reporting agencies, CSC Credit Services and Trans Union Corporation, relied on the state court Judgment Docket and indicated in Greg's credit report that he owed the money judgment. Greg and Mary Henson subsequently brought this suit against Cosco, CSC, and Trans Union. They sought recovery against CSC and Trans Union for violating various provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 through 1681t, and alleged several state law claims against Cosco. The district court dismissed the Hensons' second amended complaint for failure to state a claim for which relief can be granted. We affirm in part and reverse in part.

## Background

In June of 1986, Greg Henson purchased a 1980 Chevrolet Camaro Z–28 from an unknown party. He financed the purchase by executing a note with Irwin Union Bank of Columbus, Indiana. In March of 1990, Greg's brother, Jeff, filed a loan application with Cosco so that he could purchase the Camaro from Greg. Cosco loaned Jeff enough money to purchase the car and paid off Greg's note with Irwin. Soon thereafter, the Camaro was stolen and Jeff stopped making payments to Cosco.

On February 7, 1990, Cosco filed suit against Jeff and Greg in the Bartholomew Circuit Court in Columbus, Indiana. Cosco alleged in its complaint that Jeff had defaulted on his loan obligation. Cosco sought possession of the Camaro and a 1978 Ford Mustang, so that they could be sold and the proceeds applied to Jeff's outstanding loan balance. Cosco stated in the complaint that "Greg Henson, may claim some interest in the 1980 Chevy Camaro Z–28 ... and he is made a party to this litigation to answer as to any ownership interest in or other claim that he may have to said automobile, if any."

On April 17, 1990, Cosco filed a Motion for Default Judgment and Judgment of Foreclosure against Jeff and Greg. The motion was prepared by Cosco's attorney, James K. Voelz, and contained proposed findings of fact and law. Cosco proposed the following finding, which the state court adopted: "the Court further finds that the Defendant, Greg Henson, has no ownership of or interest in the 1980 Chevy Camaro Z–28 ... and the Plaintiff may sell said automobile free and clear of any claim or right of Greg Henson." After Cosco took possession of the Camaro and sold it for $850, it asked the court to render a deficiency judgment against Jeff. The court rendered this judgment against

Jeff on July 18, 1990. Shortly thereafter, the Clerk of the Bartholomew Circuit Court incorrectly noted the judgment in the Judgment Docket. The Judgment Docket listed Jeff and Greg together and erroneously indicated that a money judgment was entered against both of them in the amount of $4,075.54.

Greg and his wife, Mary, initially filed this suit in the Bartholomew Circuit Court against CSC, Trans Union and Cosco. Trans Union timely removed the case to federal court. As the result of several pre-trial motions, Greg and Mary found it necessary to amend their complaint twice. It is their second amended complaint that is the subject of this appeal.

In that complaint, Greg and Mary allege that CSC and Trans Union violated the FCRA by "erroneously report[ing] in its credit reports that Greg owed a money/civil judgment in the amount of $4,076." According to the Henson's complaint, the erroneously reported money/civil judgment arose out of the earlier Indiana state court action. The Hensons also allege that they "contacted Trans twice, in writing, to correct the horrible injustice. However, nobody at Trans would correct the injustice." The Hensons' complaint does not allege that they ever contacted CSC concerning the alleged error in Greg's credit report.

The Hensons also allege that Cosco negligently failed to release Greg from the default judgment. The complaint further alleges that Cosco violated Ind.Code Ann. § 32–8–1–1 (West 1993),[1] by not releasing Greg from the judgment. Finally, the complaint alleges that Cosco invaded the privacy of Greg and Mary by casting a false light upon them through its refusal to release Greg from the judgment. As the result of the defendants' conduct, the complaint states that Greg and Mary suffered "denial of credit, high interest loans, public ridicule and humiliation, and embarrassment."

After the Hensons filed their second amended complaint, all the defendants reasserted previously filed motions to dismiss. The district court granted the defendants' motions and dismissed the Hensons' complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In reaching its decision, the district court noted that a consumer must allege that a credit reporting agency prepared a credit report containing inaccurate information to state a claim under the FCRA. *Henson v. CSC Credit Servs.*, 830 F.Supp. 1204, 1207 (S.D.Ind. 1993). The court further found that "technically accurate" information may still be considered inaccurate under the FCRA if the information could be interpreted as being misleading or incomplete. *Id.* The district court noted that the D.C. Circuit in *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37 (D.C.Cir.1984), adopted a "balancing test" in cases where information is "technically accurate" but misleading. *Id.* Under that test, the court is required to "weigh the potential that the information will create a misleading impression against the availability of more accurate information ... and the burden of providing that information." *Koropoulos*, 734 F.2d at 42.

Applying this test,[2] the district court found that "requiring Trans Union and CSC to have discovered the clerk's erroneous entry of judgment against Greg is overly burdensome under the balancing test." *Henson*, 830 F.Supp. at 1207. Thus, the court held that "Trans Union's and CSC's reporting of the recorded default judgment was not 'inaccurate' under FCRA" and granted their motions to dismiss. *Id.* The court also granted Cosco's motion to dismiss, finding that Cosco had no duty to correct the erroneously re-

---

**1.** The statute provides in relevant part: "It shall be the duty of every person ... who is the owner, holder or custodian of any ... judgment ... which is recorded in the state of Indiana, to release, discharge and satisfy of record such ... judgment ... when the debt or obligation, together with the interest thereon which such ... judgment ... was made to secure, shall have been paid lawfully tendered and discharged."

**2.** The district court did not make a specific finding as to whether the information contained in Greg's credit report was "technically accurate" but misleading. However, because the court applied the *Koropoulos* balancing test, we assume that it believed that the information in question was "technically accurate."

corded default judgment and no duty to release Greg from the judgment.

The Hensons now appeal and we review dismissal of their complaint under Fed.R.Civ.P. 12(b)(6) *de novo.* We accept all factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Northwest Tissue Ctr. v. Shalala,* 1 F.3d 522 (7th Cir.1993) (citing *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir. 1991)). Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate only if the plaintiff can establish no set of facts upon which relief can be granted. *Id.*

### Analysis

*Judicial Notice of Public Records Under 12(b)(6)*

As a preliminary matter, the parties dispute whether the district court was permitted to consider the public court documents filed in the earlier Indiana state court case in deciding the defendants' motions to dismiss. Fed.R.Civ.P. 12(b) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Despite the express language of Fed.R.Civ.P. 12(b), we recently held that "[t]he district court may also take judicial notice of matters of public record" without converting a 12(b)(6) motion into a motion for summary judgment. *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991). We are not alone. *See MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986) ("On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings.") (citations omitted); *Pension Benefit Guar. Corp. v. White Consolidated Indus.,* 998 F.2d 1192, 1196–1197 (3rd Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994); *Allen v. West-*

*point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) ("In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to the facts stated on the face of the complaint ... and to matters of which judicial notice may be taken.") (citation omitted); 5A Wright & Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed. 1990) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record ... also may be taken into account."). The district court properly considered the public court documents in deciding the defendants' motions to dismiss, thus we proceed to merits of the Hensons' claims.

*Duty to Use Reasonable Procedures Under the FCRA*

Under the FCRA, a consumer reporting agency is required to follow "reasonable procedures to assure maximum possible accuracy" of the information contained in a consumer's credit report. 15 U.S.C. § 1681e(b). A credit reporting agency that negligently violates the provisions of the FCRA, is potentially liable for actual damages, costs, and attorney's fees. 15 U.S.C. § 1681o. A credit reporting agency that willfully violates the Act may be liable for punitive damages as well. 15 U.S.C. § 1681n.

In order to state a claim under 15 U.S.C. § 1681e(b), a consumer must sufficiently allege "that a credit reporting agency prepared a report containing 'inaccurate' information." *Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir.1991). However, the credit reporting agency is not automatically liable even if the consumer proves that it prepared an inaccurate credit report because the FCRA "does not make reporting agencies strictly liable for all inaccuracies." *Id.* A credit reporting agency is not liable under the FCRA if it followed "reasonable procedures to assure maximum possible accuracy," but nonetheless reported inaccurate information in the consumer's credit report.

The parties initially dispute whether the information contained in Greg's credit report was inaccurate. Greg argues that the

information was inaccurate because his credit report indicated that he owed a money judgment in the amount of $4,075.74. Greg has shown that he owes no such money judgment. Trans Union and CSC, on the other hand, state that they simply reported that "a judgment against [Greg] in the amount of $4,076 had been entered in the public records of the Bartholomew Superior Court." According to Trans Union and CSC, this was true—a judgment had been *entered* against Greg by the Clerk of the Bartholomew Superior Court.

Trans Union and CSC argue that the Judgment Docket conclusively establishes that a money judgment was *entered* against Greg. They are wrong. Under Indiana law, the clerk enters the judgment in the "Record of Judgments and Orders." Trial Rule 58(A), Indiana Rules of Trial Procedure. It is the physical act of placing the rendered judgment into the "Record of Judgments and Orders" that constitutes the official entry of judgment. The clerk simply "note[s] the entry of judgment in the Chronological Case Summary and *Judgment Docket.*" *Id.* (emphasis added). Thus, we must look to the "Record of Judgment and Orders," to determine whether a judgment was entered against Greg.

The court documents in question conclusively establish that no money judgment was *rendered*[3] against Greg. We have reviewed the default and deficiency Judgments and they do not purport to render a *money* judgment against Greg. The Default Judgment simply states that Greg has no interest in the Camaro. Moreover, because entry of judgment occurs when the clerk puts a copy of the rendered judgment into the "Record of Judgments and Orders," no money judgment could have possibly been officially *entered* against Greg because none was ever rendered against him. The documents do conclusively establish, however, that the clerk erroneously *noted* in the Judgment Docket

that a money judgment had been entered against Greg.

Thus, even if we were to accept CSC and Trans Union's position that they only reported that a money judgment had been *entered* against Greg, we would still conclude that this information was inaccurate. The court documents show that no money judgment was ever *entered* against Greg. Making a notation on the Judgment Docket is not the official act of entering judgment under Indiana law.[4]

■ Our finding that the information contained in Greg's credit report was inaccurate does not end our inquiry. CSC and Trans Union are not liable under the FCRA if they followed "reasonable procedures to assure maximum possible accuracy" of the information reported. CSC and Trans Union argue that they followed "reasonable procedures" by obtaining the information from the Judgment Docket, a presumptively reliable source. We agree and hold that, as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate.

A contrary rule of law would require credit reporting agencies to go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action. Such a rule would also require credit reporting agencies to engage in background research which would substantially increase the cost of their services. In turn, they would be forced to pass on the increased costs to their customers and ultimately to the individual consumer.

■ Moreover, reliance on official court records is unlikely to lead to inaccurate credit reporting except in isolated instances. Requiring credit reporting agencies to look beyond the face of every court document to find

---

3. "The rendition of judgment is the judicial act of the court in pronouncing the sentence of the law on the facts in controversy as ascertained by the pleadings and verdict or findings...." 49 C.J.S. *Judgments* § 100 (1947).

4. We do not decide whether a credit reporting agency may be liable for reporting "technically accurate" but misleading information. The district court mistakenly applied the *Koropoulos* court's balancing test, because the information contained in Greg's credit report was not "technically accurate."

the rare case when a document incorrectly reports the result of the underlying action would be unduly burdensome and inefficient. The consumer is in a better position than the credit reporting agency to detect errors appearing in court documents dealing with the consumer's own prior litigation history. Once the information is erroneously reported on the consumer's credit report, the consumer will be alerted to the error and can then seek correction of the error by notifying the credit reporting agency or the court itself. Absent such notice, however, the credit reporting agency may rely on the accuracy of public court documents in preparing a credit report without being subject to liability under the FCRA.

The district court correctly dismissed the Hensons' complaint in so far as it alleges that CSC and Trans Union violated section 1681e(b).

### Duty to Reinvestigate

■ In their complaint, the Hensons also allege that "Greg by his wife Mary, contacted, Trans [Union] twice, in writing, to correct the horrible injustice.[5] However, nobody at Trans would correct the injustice." The complaint does not specifically allege that Trans Union violated 15 U.S.C. § 1681i, which provides in pertinent part:

> If the completeness or accuracy of any item of information contained in his file is disputed by the consumer, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall within a reasonable period of time reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant. If after such reinvestigation such information is found to be inaccurate or can no longer be verified, the consumer reporting agency shall promptly delete such information.

However, the Hensons contend that their complaint properly states a claim pursuant to section 1681i. Trans Union, on the other hand, contends that the "Hensons do not allege they ever advised Trans Union of any error or falsely reported information, but merely rather vaguely claimed an injustice was committed, without identifying the injustice or the parties to it." Thus, Trans Union argues, the Hensons have failed to state a claim under section 1681i.

When reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), we are required to "consider the complaint in the light most favorable to the claimant." *Henry C. Beck Co. v. Fort Wayne Structural Steel Co.*, 701 F.2d 1221, 1223 (7th Cir.1983) (citation omitted). The language of the complaint, viewed in the light most favorable to the Hensons, can reasonably be considered as an allegation that Mary contacted Trans Union and notified it of the disputed money judgment and that Trans Union did not conduct a proper reinvestigation and failed to correct the inaccurate information. Thus, the Henson's complaint does properly allege a violation of section 1681i.

Even so, Trans Union argues that it did not violate a duty to reinvestigate because it had no duty, as a matter of law, to go beyond the Judgment Docket in conducting its reinvestigation. We disagree. A credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice. As we indicated earlier, a credit reporting agency may initially rely on public court documents, because to require otherwise would be burdensome and inefficient. However, such exclusive reliance may not be justified once the credit reporting agency receives notice that the consumer disputes information contained in his credit report. When a credit reporting agency receives such notice, it can target its

---

**5.** In their initial brief, the Hensons' argue that they also contacted CSC in an attempt to get them to correct this "horrible injustice." However, in their reply brief, the Hensons concede that their second amended complaint contains no allegation that they contacted CSC. By failing to allege that they reported the error in Greg's credit report to CSC, the Hensons have failed to state a claim against CSC under section 1681i. *See McPhee v. Chilton Corp.*, 468 F.Supp. 494, 496 n. 2 (D.Conn.1978) (holding that section 1681i did not apply where the plaintiffs did not allege that they contacted the consumer reporting agency).

resources in a more efficient manner and conduct a more thorough investigation.

 Accordingly, a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information, in this case the Judgment Docket. *Cf. Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir.1986), *cert. denied*, 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987) (holding that it was unreasonable for a credit reporting agency to only contact an agent of the creditor to re-verify a delinquent account balance reported in the plaintiff's credit report where the plaintiff notified the credit reporting agency that he had a personal dispute with the agent).

Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. The credit reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.

On remand, the Hensons will have the burden of showing that they brought the alleged error in Greg's credit report to Trans Union's attention. If they meet their burden, the trier of fact must weigh the above mentioned factors in deciding whether Trans Union violated the provisions of section 1681i.

*State Law Claims Against Cosco*

 The Hensons' complaint contains various state law claims against Cosco. All of those claims are contingent on the Hensons' contention that Cosco either had a duty to correct the erroneous Judgment Docket or a duty to release Greg from the judgment. As detailed above, what went wrong in the Indiana state court case was not Cosco's fault. It was the Clerk of the Bartholomew Circuit Court that erroneously noted in the Judgment Docket that a money judgment had been entered against Greg. Cosco could not have possibly *released* Greg from a judgment that was never entered. Moreover, under Indiana law, the clerk is given the

exclusive statutory duty to maintain the Judgment Docket. Ind.Code.Ann. § 33–17–2–3(a) (West 1993) ("The *clerk* shall keep a circuit court judgment docket.") (emphasis added). If the clerk is responsible for errors appearing in the Judgment Docket, the litigants have no duty to correct those errors.

The district court properly dismissed the Hensons' claims against Cosco.

### Conclusion

For all of the foregoing reasons, the decision of the district court is AFFIRMED in part and REVERSED in part and this case is REMANDED for further proceedings consistent with this opinion.