Samuel SMITH, Plaintiff,

v.

AUTO MASHERS, INC.

and

DAC Services, Defendants.

No. CIV.A. 97–0052–L.

United States District Court,
W.D. Virginia,
Lynchburg Division.

Feb. 16, 2000.

David L. Heilberg, Charlottesville, VA, JAmes Robert Cooke, Jr., Richmond, VA, for Plaintiff.

John Tandy Cook, Caskie & Frost, Lynchburg, VA, for Defendant Auto Mashers, Inc.

H. Dill Battle, III, Michael Eugene Derdeyn, Terry Lynn, Robert Craig Wood, Kerri Borchardt Taylor, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for Defendant DAC Services.

TURK, District Judge.

This matter is before the Court on Defendant DAC Services' ("DAC") Motion for Summary Judgment. For the reasons that follow, DAC's Motion is granted, as to both the Plaintiff and Defendant Auto Mashers, Inc.'s ("Auto Mashers") cross-claim.[1] The remaining claims are remanded to the Circuit Court of Buckingham County.

### OPERATIVE FACTS

During the early part of June, 1996, the Plaintiff, Samuel Smith, sought employment with Builder's Transport, an interstate trucking firm based in South Carolina.[2] Federal regulations require that all trucking firms investigate newly retained drivers for prior drug use. Defendant DAC is a firm specializing in conducting these background checks for trucking companies. Builder's Transport contracted with DAC to provide these checks.

As part of his application, Mr. Smith executed a release form authorizing DAC to inquire into his prior employment history. On the form, Smith also provided the names and phone numbers of several prior employers, including Auto Mashers. DAC then contacted Auto Mashers, calling on

---

1. Because the issue as to Auto Mashers' cross-claim was essentially conceded by all counsel during oral arguments, this Opinion will not address it.

2. It is apparently undisputed that Builder's Transport has since gone out of business.

June 14, 1996. Julie Scott, a DAC employee, spoke with the person who answered Auto Mashers' phone, a man who identified himself as Sherman Breeden[3]. When Ms. Scott asked whether the Plaintiff had tested positive for drugs or alcohol during his tenure with Auto Mashers, Breeden replied "Yes, madam, he did." Breeden was unable to provide any further information, such as the date of the failed test, and the conversation ended.

The same day, DAC sent out two reports based upon Scott's conversation with Breeden. The first was to Builder's Transport, reporting that DAC had received an unconfirmed report that Smith had a positive drug test, and providing the name and number of Auto Mashers as the source of the report. The second went to Auto Mashers, requesting additional information to confirm the alleged positive drug screen. However, no response was forthcoming from Auto Mashers. On July 1, 1996, the Plaintiff was fired by Builder's Transport-over two weeks after they received the report from DAC. On August 13, 1996, the Plaintiff contacted DAC and stated that he had never taken a drug test, and so could not have failed one. DAC then re-contacted Auto Mashers, who confirmed that Smith had never been tested while in their employ. This information, obtained by DAC on August 14, 1996, was immediately reported to Builder's Transport in a report correcting the earlier information. There is no evidence that any other employer or potential employer ever received a copy of the June 14, 1996 DAC report containing the erroneous positive drug screen.

In this action, the Plaintiff sued Auto Mashers for common law defamation and negligence, and DAC for damages under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.A. §§ 1681e(b), 1681h(e), 1681i, 1681m(c), 1681n, and 1681o. Auto Mash-

ers filed a cross-claim against DAC for indemnity. For the reasons below, the Plaintiff's claims against DAC fail as a matter of law.

## DISCUSSION

### I. FCRA Claim Against DAC

The claim against DAC must fail because the Plaintiff simply has insufficient evidence to prove its case. When the Plaintiff bears the burden of proving an element of its case, but fails to make a showing that it can do so, summary judgment is proper because "there is no genuine issue of material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Although it invokes no fewer than six sections of the FCRA, the Amended Complaint correctly states that the crux of its dispute with DAC is over the reasonableness of DAC's procedures for assuring "maximum accuracy" in the information it collected from Auto Mashers. (Amended Complaint at 2). Indeed, as DAC's brief points out, several of the FCRA sections listed are procedural in nature, so that only two— §§ 1681e(b) and 1681i-are substantive grounds for recovery.

■ Claims under § 1681e(b) require a plaintiff to prove four elements: (1) failure by the reporting agency to follow reasonable procedures to assure the accuracy of its reports; (2) a report which is, in fact, inaccurate; (3) damages to the plaintiff; and (4) proximate cause. Even assuming that elements (2) through (4) could be proven, the record provides the Plaintiff with no way to establish element (1). The Federal Trade Commission guidelines implementing this section make it clear that

---

**3.** It is undisputed that Breeden did not work for Auto Mashers, but was employed as a janitor by the brother of Auto Mashers' owner. The brothers ran separate businesses, but shared office space and a phone. Before he could be questioned about his role in this case, Breeden perished in a fire.

[t]he section does not require error free consumer reports. If a consumer reporting agency accurately transcribes, stores, and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate this section simply by reporting an item of information that turns out to be inaccurate.

16 C.F.R. Part 600, 391. Rather, the reporting agency is not "on the hook" until it "learns or should reasonably be aware of errors in its reports that may indicate systematic problems." Then, it "must review its procedures for assuring accuracy." *Id.*

 The Plaintiff has come forward with no evidence to show that any incorrect information contained in DAC's report was the result of a "systematic" problem. Indeed, the Plaintiff has no evidence whatever regarding the procedures employed by DAC, and their viability. The Plaintiff has only an argument that the procedures employed were clearly "unreasonable" since incorrect information was, in fact, reported. But the guidelines demonstrate that such is not the standard:

Whether a consumer reporting agency may rely on the accuracy of information from a source depends on the circumstances. This section does not hold a consumer reporting agency responsible where an item of information that it receives from a source that it reasonably believes to be reputable appears credible on its face, and is transcribed, stored and communicated as provided by that source. Requirements are more stringent where the information furnished appears implausible or inconsistent, or where procedures for furnishing it seem likely to result in inaccuracies, or where the consumer reporting agency has had numerous problems regarding information from a particular source.

*Id.* at 392. The Plaintiff has made no showing that it was unreasonable for DAC to accept Breeden's word as credible-at least initially. No evidence has been presented that Breeden's statements to DAC were inherently implausible or internally inconsistent. And while the Plaintiff's attorneys were correct during oral argument that the transcript of Ms. Scott's conversation with Breeden does not reveal that DAC took any steps to determine whether Breeden was authorized to speak on behalf of Auto Mashers, neither does it prove the opposite. In any event, the Plaintiff has produced no evidence that DAC does not inquire into the authority of the people it talks to on the phone.

 In spite of valiant efforts by Plaintiff's counsel, the bottom line is this: In passing the FCRA, Congress and the Federal Trade Commission struck a balance between the rights of citizens to be reported about accurately and the need for efficiency among credit reporting agencies. The balance they struck places a comparatively light burden on reporting agencies regarding the accuracy of information they gather. In order to comply with FCRA and the guidelines, a reporting agency need only disregard information that is plainly wrong or suspicious. "Absent some prior indication that the information is inaccurate, it is reasonable and cost efficient to report information without independent verification." *Henson v. CSC Credit Servs.,* 29 F.3d 280, 285 (7th Cir. 1994). Indeed, this rule was applied to DAC's own procedures in *Fomusa v. Energy Sharing Resources, Inc.,* 1999 WL 436596 at *2 (N.D.Ill.1999) (approving DAC's procedures as "reasonable ... to assure maximum accuracy.")

 The flip side of this balance is that reporting agencies, as their name implies, are held to high standards of accuracy in the *reporting* of information. But so long as they accurately report what they have been told, and maintain a system reasonably designed to prevent repetitive or systematic errors, they are in compliance with the regulations. The Plaintiff has failed to put forth any affirmative evidence that DAC ever failed to be conscientious in this

regard. Indeed, the record shows just the opposite-when DAC sent its June 14 report to Builder's Transport, they were careful to indicate that the positive drug screen was "unconfirmed" and that further inquiries were in progress. They also took further steps to investigate the information, by sending out requests for further details to Auto Mashers. And finally, the Plaintiff's contention that DAC breached its duty to the Plaintiff by failing to correct the June 14 report in a timely manner must fail because the evidence is that DAC sent a corrected report to Builder's Transport *the same day* it received corrected information from Auto Mashers–August 14, 1996. This was also within twenty-four hours of the problem being first brought to DAC's attention by the Plaintiff. Simply put, there is no evidence of any negligence or failure by DAC to comply with the requirements of the FCRA.

For these reasons, DAC's Motion for Summary Judgment is granted.

### II. Remand of Remaining Claims to Circuit Court

Without DAC, all that remains of the original complaint are common law negligence and defamation claims against Auto Mashers. These were both originally brought in the Circuit Court for Buckingham County and, as there is no diversity between the Plaintiff and Auto Mashers, they have been before this Court purely as a matter of Supplemental Jurisdiction, under 28 U.S.C.A. § 1367.

Because this Court has "dismissed all claims over which it has original jurisdiction," the case may properly be remanded to state court under 28 U.S.C.A. § 1367(c)(3). *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (stating that District Court may remand a properly removed case to state court if all jurisdiction-supporting claims are dismissed and only pendent state claims remain.); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, this case is remanded to the Circuit Court for Buckingham County.

### CONCLUSION

For the foregoing reasons, DAC's Motion for Summary Judgment is granted as to both the Plaintiff's claims and Auto Mashers' cross-claim. The remaining claims are remanded to the Circuit Court for Buckingham County.

The Clerk of Court is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

### ORDER

This matter is before the Court on Defendant DAC Services' ("DAC") Motion for Summary Judgment. A hearing was held on February 11, 2000. After reviewing the record, and the arguments of counsel, it is hereby

### ADJUDGED AND ORDERED

(1) that DAC's Motion for Summary Judgment be **GRANTED** as to the Plaintiff;

(2) that DAC's Motion for Summary Judgment be **GRANTED** as to Defendant Auto Mashers, Inc.'s cross-claim; and

(2) that the remaining claims, against Auto Mashers, Inc., before this Court pursuant to its Pendent Jurisdiction under 28 U.S.C.A. § 1367(c)(3), be **REMANDED** to the Circuit Court for Buckingham County.

The Clerk of Court is directed to send certified copies of this Order and the accompanying Memorandum Opinion to all counsel of record.