Jerry L. CRABILL, Plaintiff,

v.

TRANS UNION L.L.C., Defendant.

No. 99–1024.

United States District Court,
C.D. Illinois.

April 17, 2000.

Jerry L. Crabill, Macomb, pro se.

Monica L. Thompson, Daniel O. Halvorsen, Rudnick & Wolfe, Chicago, Il, Keith J Braskich, Davis & Campbell LLC, Peoria, IL, for Trans Union Corporation, defendants.

## ORDER

MIHM, District Judge.

Now before the Court are cross motions for summary judgment. For the reasons set forth below, Defendant's Motion for Summary Judgment [# 27] is GRANTED, and Plaintiff's Motion for Summary Judgment [# 31] is DENIED.

### FACTUAL BACKGROUND

Defendant, Trans Union, is a consumer reporting agency that maintains a consumer credit reporting database with over 300 million files containing identifying and credit information on active consumers. It issues consumer credit reports to lenders and other subscribers upon request. In requesting an individual's credit report, Trans Union requires subscribers to furnish the name and address of the individual; the provision of social security numbers is also encouraged.

Plaintiff, Jerry L. Crabill ("Crabill"), resides at 10705 E. 1200 S. Johnson Street in Macomb, Illinois. His social security number is xxx-xx-xxx9.[1] Crabill has a brother named John D. Crabill, who resides at 4160 Briar Lane in Mt. Zion, Illinois. The first eight digits of John Crabill's social

---

1. The Court has substituted x's for the first eight digits of Crabill's social security number.

security number are identical to those of his brother; the only difference is that John Crabill's social security number ends in an 8 instead of a 9. On January 20, 1999, Crabill brought this suit against Trans Union under the Fair Credit Reporting Act (the "Act"), 15 U.S.C. § 1681, essentially alleging that Trans Union wrongfully merged his credit information with that of his brother, resulting in the issuance of false or misleading credit reports to lenders that caused him to be denied credit, and failed to take proper action to investigate and correct these errors when brought to its attention.

Both parties have filed motions for summary judgment, which are now fully briefed and ready for resolution. This Order follows.

## DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995).

Crabill has alleged that Trans Union violated 15 U.S.C. § 1681s–2(b), which sets forth the duties of furnishers of information upon receiving notice of a dispute. Specifically, that section of the Act provides:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency; and
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s–2(b)(1). As this section plainly applies only to the furnishers of information to credit reporting agencies, and not credit reporting agencies, such as Trans Union, the section cited in the First

**798**

Amended Complaint cannot supply Crabill with a viable cause of action in this case.

After looking beyond the label attached to the claim asserted in the First Amended Complaint, the Court concludes that what Crabill has actually alleged is a violation of 15 U.S.C. § 1681e(b), which provides in relevant part:

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b); *Henson v. CSC Credit Services*, 29 F.3d 280,.284 (7th Cir. 1994). Credit reporting agencies, such as Trans Union, that negligently violate the provisions of the Act are "potentially liable. for actual damages, costs, and attorney's fees" and may be liable for punitive damages as well if the violation was willful. *Id.*

▮ In order to establish a violation of § 1681e(b), a consumer must first establish "that a credit reporting agency prepared a report containing 'inaccurate' information." *Id.,citing Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir.1991). However, the Act does not make reporting agencies strictly liable, and such agencies will not be liable if they reported inaccurate information in the consumer's credit report but nevertheless followed "reasonable procedures to assure maximum possible accuracy." *Henson*, 29 F.3d at 284.

While Crabill insists that the information provided by Trans Union was inaccurate, a closer review reveals that this is not exactly the case. Crabill has not set forth any facts or evidence indicating that the information contained in *his* credit reports as prepared by Trans Union was false or inaccurate.[2] The correspondence and credit reports of record indicate that Crabill's individual credit file was sent with the notation that another possible consumer file would follow and that his brother's separate credit file then followed. Essentially, Crabill argues that because his brother's credit report was attached and sent along with his, it created the false impression that the information contained in both reports pertained to him. Thus, Crabill contends that Trans Union's policy of forwarding both credit reports in response to an inquiry made it appear that he had more outstanding debt than he actually did and misled the persons requesting his credit report as to his actual financial status.

The Court is unaware of any case law in the Seventh Circuit specifically addressing whether a credit reporting agency can be liable for reporting misleading but technically correct credit information.[3] However, in *Koropoulos v. Credit Bureau, Inc.*, the D.C. Circuit held that if a credit reporting agency reports factually correct information that could also be interpreted as being misleading or incomplete, there could be a factual question regarding whether the credit reporting agency's report is so misleading as to be "inaccurate" within the meaning of the Act. 734 F.2d 37, 40–42 (D.C.Cir.1984).

▮ Even assuming that Trans Union's practice of transmitting possibility files in

---

2. The one occasion where Crabill has submitted a credit report containing comingled or inaccurate credit information was clearly prepared by another entity, Credco, not by Trans Union. There is no evidence in the record indicating that Trans Union provided the information to Credco in any format other than it did on each of the other occasions when it provided credit reports to other entities. In fact, a letter dated January 19, 1998, to Crabill from Niki Lee, Credco's Customer Service Supervisor, clearly indicates that his brother's file was attached as a possibility file based on

similar identification fields; there is no suggestion that his brother's information was actually combined or comingled with his credit information in the version of the report received from Trans Union. Thus, there is no evidence establishing that the Credco report in question resulted from anything other than Credco's misinterpretation of the information provided by Trans Union.

3. In *Henson*, the Seventh Circuit expressly stated that it was not deciding this issue. 29 F.3d at 285 n. 4.

response to inquiries is so misleading as to constitute "inaccurate" information, the Court must next examine the reasonableness of the procedures adopted by the credit reporting agency to assure maximum possible accuracy. In *Koropoulos,* the D.C. Circuit employed a balancing test to facilitate this examination. *Id.* at 42. Under this test, courts weigh:

> [T]he potential that the information will create a misleading impression against the availability of more accurate information and the burden of providing such information. Clearly, the more misleading the information and the more easily available the clarifying information, the greater the burden upon the consumer reporting agency to provide this clarification.

*Id.* The Fifth Circuit has held that the standard to be applied to this situation is what a reasonably prudent person would do under the circumstances. *Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir. 1986).

Here, there is no dispute that the information provided to the various lenders or subscribers was in response to legitimate requests for Crabill's consumer credit report. According to Crabill, the various lenders each submitted requests for the credit report of Jerry L. Crabill, with the social security number xxx-xx-xxx9 and residing at 10705 E. 1200 S. Johnson Street, Macomb, Illinois 61455. Trans Union and its affiliated credit bureau then used what they have termed a "weighted value" system to determine which consumer credit files would most likely match the information provided by the lenders. Based on the information supplied by the lenders, Trans Union's program searches its database for the file or files which it believes most closely match the information supplied. The program notes matches for fields such as last name, the first letter of the first name, house number ranges, state of residence, and eight of the nine digits in the social security number.

When multiple files are deemed eligible through this process, they are reviewed to determine whether there are any obvious reasons to suspect that the selected files are not the correct files to return to lenders. The files will also be reviewed to assess whether they are appropriate for merging into a single file or whether they are different enough to properly be presented as two separate files from which the subscriber requesting the information should select the file that actually belongs to its customer. Whenever multiple files are transmitted to the lender, the file with the highest weighted match is sent first, with the clear notation and line indicating the end of that first report. There will also be a message indicating that an additional file follows that could be a possible match, prior to the beginning caption of the possibility file. The attached possibility file is clearly captioned with the identifying information for that consumer and also contains a special alert message indicating that the possibility file does not exactly match certain information specified in the inquiry, such as address or social security number. In this case, Crabill's credit report also contained a warning that he was not to be confused with his brother, John D. Crabill, who resided in the Decatur area, as well as his consumer statement indicating that he had notified Trans Union not to give out his name, social security number, or any other information without his authorization.

Although in an ideal world only the credit report for the individual requesting credit would be returned, the realities of the world that we live in are such that the Court cannot find that the procedures implemented by Trans Union are unreasonable. Within a database containing more than 300 million consumer files, there are undoubtedly similarities in names, addresses, and social security numbers that could cause confusion when responding to requests from lenders. The existence of more than one individual with the same or similar names is inevitable. Individuals undoubtedly move from one address to another during their lifetimes and use various forms of their legal names when apply-

ing for credit. In addition, the possibility that a subscriber will inadvertently transpose the digits in an address or social security number or provide incomplete information when requesting a report cannot be ignored. The described procedures assign weighted values and use other objective criteria to determine which file has the closest match to the information provided by the creditor and eliminate files that are obviously non-responsive. Based on these realities, the Court finds as a matter of law that Trans Union maintained and followed reasonable procedures to assure the maximum possible accuracy in preparing consumer credit reports.

Two consumer files were transmitted by Trans Union in response to creditor requests. However, the exhibits of record reveal that the two files were separate and distinct. Crabill's file was transmitted first and contained his consumer statement and the warning not to confuse his file with that of his brother. At the end of his report was the clear notation "End of Credit Report," followed by the comment that an additional possibility file would follow. His brother's file then appeared after the full caption listing John D. Crabill's name, address, birth date, telephone number, social security number, and other identifying information. Within his brother's file was also the special warning indicating that John D. Crabill's report was not an exact match for the address and social security number submitted by the subscriber. The manner of presentation and warnings substantially reduced the possibility that anyone engaging in a reasonably careful, conscientious review of the reports would be confused or misunderstand what was being presented. It was then the responsibility of the creditor receiving these reports to review them, take note of the warnings, and determine which was the correct file for the individual actually requesting credit.

The information provided by Trans Union in this case was not technically inaccurate, nor can the information as presented with numerous qualifications and warnings be considered seriously misleading when reviewed with reasonable care. Moreover, what measures could be taken by Trans Union to provide more accurate information without increasing the probability that an incomplete report would be presented are far from apparent; where similar consumer files exist, the creditor requesting the report is clearly in the best position to determine which of the files pertains to the individual applying for credit. Thus, in light of the significant clarifying information that is actually provided by Trans Union in these types of situations, the Court concludes that the potential for a misleading impression is outweighed by the burden which would result from the additional investigation that would be required to eliminate all possibility files and the potential for increased inaccuracy that would result if possibility files were simply ignored.

The Court is not unsympathetic to the inconvenience and confusion that Crabill has undoubtedly suffered as a result of Trans Union's policy of transmitting his brother's credit file as a possible match in response to subscribers' inquiries. However, the Court's sympathy cannot influence its duty to interpret and apply the law to the uncontroverted material facts of the case. As the Court has determined that the procedures employed by Trans Union are reasonable as a matter of law, there is no genuine issue of material fact requiring resolution by a jury, and Trans Union is entitled to summary judgment.

## CONCLUSION

For the reasons set forth above, Trans Union's Motion for Summary Judgment [# 27] is GRANTED, and Crabill's Motion for Summary Judgment [# 31] is DENIED. The final pretrial conference set for April 28, 2000, and the jury trial scheduled to begin on June 19, 2000, are CANCELED, and this matter is now TERMINATED.