**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 10, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GARY A. WRIGHT,

      Plaintiff - Appellant,

v.

No. 14-1371

EXPERIAN INFORMATION
SOLUTIONS, INC.; TRANS UNION
LLC,

      Defendants - Appellees.
_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:12-CV-03268-CMA-CBS)**
_____

Peter R. Bornstein, Law Offices of Peter Bornstein, Greenwood Village, Colorado, appearing for Plaintiff-Appellant.

Nathaniel P. Garrett (Meghan E. Sweeney, with him on the brief), Jones Day, San Francisco, California, appearing for Appellee Experian Information Solutions, Inc.

Martin E. Thornthwaite (Paul L. Myers, with him on the brief), Strasburger & Price, LLP, Frisco, Texas, appearing for Appellee Trans Union LLC.
_____

Before **BRISCOE**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.

_____

On May 27, 2009, the Internal Revenue Service ("IRS") filed a notice of federal tax lien ("NFTL") with the Pitkin County Recorder (the "Recorder") in Colorado listing as name of taxpayer:

> Attorneys Title Insurance Agency of
> Wright Gary A Member

On May 8, 2009, Mr. Wright had sent a check to the IRS for the unpaid employment taxes underlying the lien.

The Recorder listed the lien on its indexing website as against Gary A. Wright in his personal capacity. Credit reporting agencies ("CRAs") Experian Information Services, Inc. ("Experian") and Trans Union LLC ("Trans Union") received this information about the lien from their contractor, LexisNexis, and included it in their reports of Mr. Wright's credit history.

In 2011, Mr. Wright learned about the lien appearing in his credit reports. He sent letters to the CRAs disputing the lien, asserting (1) the IRS had withdrawn the lien because the taxes had subsequently been paid, and (2) the NFTL inaccurately stated the lien was assessed against him when it should have been assessed only against Attorneys Title Insurance Agency of Aspen ("ATA"). In response to these letters, the CRAs checked the information provided by Mr. Wright with LexisNexis and listed the lien on his credit report as released because it had been paid in full. The CRAs did not remove

the lien entirely from Mr. Wright's credit report because the IRS treated it as released rather than withdrawn.

Mr. Wright brought suit in the district court under the Fair Credit Reporting Act ("FCRA") and Colorado Consumer Credit Reporting Act ("CCCRA"), claiming the credit reports were inaccurate, the CRAs acted unreasonably in reporting the lien and responding to his letters, and the foregoing caused him to suffer damages.

The district court granted summary judgment to the CRAs, concluding they used reasonable procedures to prepare Mr. Wright's credit report and to reinvestigate in response to Mr. Wright's letters.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A.  *Factual History*

#### 1.  The IRS Issued an NFTL Naming Mr. Wright and ATA, and Pitkin County Recorded It

On April 9, 2007, the IRS assessed $726.83 for ATA's nonpayment of its 2004 employment taxes.  On May 27, 2009, the IRS filed the following NFTL with the Recorder:

| Form 668 (Y)(c) | 4899 | Department of the Treasury - Internal Revenue Service |
|---|---|---|
| (Rev. February 2004) | | **Notice of Federal Tax Lien** |

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #5 Lien Unit Phone: (800) 829-3903 | Serial Number 549008209 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

| Name of Taxpayer | ATTORNEYS TITLE INSURANCE AGENCY OF WRIGHT GARY A MEMBER |
|---|---|
| Residence | 715 W MAIN ST STE 305 ASPEN, CO 81611-1659 |

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 941 | 03/31/2004 | 20-0132022 | 04/09/2007 | 05/09/2017 | 726.83 |

| Place of Filing | | |
|---|---|---|
| CLERK AND RECORDER PITKIN COUNTY ASPEN, CO 81611 | Total | $ 726.83 |

This notice was prepared and signed at _____ SEATTLE, WA _____ , on this,

the ___15th___ day of ___May___ , ___2009___ .

| Signature _K. A. Mitchell_ for MICHAEL W. COX | Title ACS (800) 829-3903 | 26-00-0008 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

-4-

Aplt. App. at 504.

ATA is a Colorado limited liability corporation that provides title insurance for real estate transactions. Mr. Wright is the manager, attorney, and registered agent for ATA.[1]

The NFTL indicates the lien was for nonpayment of Form 941 employment taxes. Under "Residence," the NFTL lists ATA's business address. It also lists only ATA's taxpayer identification number. After receiving the NFTL, the Recorder indexed the lien on its website as imposed against Mr. Wright in his individual capacity.

The IRS apparently informed Mr. Wright of the NFTL because on September 10, 2009, Mr. Wright sent a letter and an application to the IRS to withdraw the NFTL. In this letter, Mr. Wright stated he paid the taxes in full by a check dated May 8, 2009, before the NFTL was filed. On December 15, 2010, the IRS released the lien, but it did not withdraw it. A withdrawal would have required the IRS to erase the NFTL, "as if the withdrawn notice had not been filed," and notify the CRAs of the erasure. 26 U.S.C. § 6323(j); *see also* 26 C.F.R. § 301.6323(j)-1. A release does not require either. *See id.*; 15 U.S.C. § 1681c(a)(3); 26 C.F.R. § 301.6325-1.[2]

---

[1] During the litigation, the CRAs learned that Mr. Wright was not a "member" of ATA, but they did not have this information, including from Mr. Wright, before the tax lien was initially reported or during their reinvestigation when Mr. Wright disputed its inclusion on his credit report.

[2] By treating the lien as released rather than withdrawn after Mr. Wright paid the taxes, the IRS appeared to consider the lien as properly imposed notwithstanding that Mr.

Continued . . .

2. **The CRAs Reported the Tax Lien, Mr. Wright Discovered the Report in 2011 and Disputed it in 2012, and the CRAs Reinvestigated and Revised the Report**

On August, 26, 2009, LexisNexis, a contractor employed by CRAs Experian and Trans Union, collected the tax lien information from the Recorder's website and reported it to the CRAs. The CRAs included the lien in their reports of Mr. Wright's credit history.

In 2011, when Mr. Wright tried to refinance his home mortgage, he first became aware that his credit reports included reference to the tax lien. In July 2012, Mr. Wright sent a letter to the CRAs disputing their reports of the lien. He asserted the lien had been paid in full and the CRAs incorrectly attributed the lien to him in his personal capacity and should have attributed it only to ATA. Mr. Wright included with this letter the following documentation: a copy of the NFTL, his September 10, 2009 letter and application to the IRS for withdrawal of the lien, and the IRS's release of the lien.

Experian sent a description of Mr. Wright's dispute to LexisNexis. LexisNexis responded that the NFTL listed Mr. Wright as one of the taxpayers and updated the lien to "satisfied/released" based on the documentation Mr. Wright provided. Aplee. Supp. App. at 161. Trans Union sent the letter to a different contractor, Intelenet, which determined Mr. Wright's credit report should be updated to reflect a "Paid Federal Tax Lien." Aplt. App. at 323. Neither CRA removed the lien from its report, but they changed their reports to show the lien had been released. They also sent Mr. Wright

Wright paid the taxes by check dated May 8, 2009 and the NFTL was dated May 15, 2009.

- 6 -

summaries of the results of their investigations. The summaries stated that if Mr. Wright disagreed with the results, he could add a statement to his credit report disputing its accuracy or contact the furnisher of the information, apparently the IRS.

In September 2012, Mr. Wright sent a second letter to the CRAs requesting them to remove the lien from his reports. He attached the same documentation as before. Experian did not perform a second investigation. It determined, based on LexisNexis's earlier investigation, that the lien against Mr. Wright was accurately reported. Experian sent a response to Mr. Wright suggesting he contact the furnisher of the information, apparently the IRS.

Trans Union requested LexisNexis to review the documentation. When LexisNexis reported the same result that Intelenet reached, Trans Union sent a summary of the investigation to Mr. Wright.

B. *Procedural History*

In December 2012, Mr. Wright sued the CRAs in federal district court, alleging negligent and willful violations of the FCRA and CCCRA. Mr. Wright alleged the NFTL showed the IRS imposed the tax lien only against ATA. He asserted claims against the CRAs under 15 U.S.C. § 1681e(b) and Colo. Rev. Stat. § 12-14.3-103.5 for failing to follow reasonable procedures to assure maximum possible accuracy in preparing the credit report that showed the lien was imposed against him. [Aplt. App. at 16.] He also asserted a claim under 15 U.S.C. § 1681i(a)(1) and Colo. Rev. Stat. § 12-14.3-106 for

failing to reasonably reinvestigate his dispute.[3] The FCRA uses the term "dispute" to describe a consumer's challenge to the accuracy of the information CRAs include in a credit report. *See* 15 U.S.C. § 1681i(a)(1). Mr. Wright also alleged he suffered economic damages and emotional distress.

The district court granted summary judgment to the CRAs, finding it "was reasonable to interpret the NFTL as extending to Plaintiff" and that the IRS "can issue [a tax lien] against both a business entity and its member." Aplt. App. at 1397-98. The court held the CRAs' initial reporting of the lien and their reinvestigation into the dispute were both reasonable because "no additional procedure implemented by Defendants would have allowed them to more accurately determine the scope of the NFTL. . . ." Aplt. App. at 1397.

---

[3] Mr. Wright's complaint included FCRA claims under § 1681e(b) and § 1681i(a)(1) and their CCCRA counterparts, Colo. Rev. Stat. §§ 12-14.3-103.5 and 12-14.3-106. In district court, the CRAs moved for summary judgment on all of these claims. In response, Mr. Wright did not cite to either CCCRA provision, seeming to treat the CCCRA claims as co-extensive with the FCRA claims. When it granted summary judgment to the CRAs, the district court noted Mr. Wright's CCCRA claim under Colo. Rev. Stat. § 12-14.3-103.5, which is corollary to the § 1681e(b) reasonable procedures claim, but stated in a footnote, "It does not appear that Plaintiff raises a parallel state-law claim regarding Defendants' reinvestigation, but such a claim would fail for the same reasons that the FCRA reinvestigation claim fails." Aplt. App. at 1393. On appeal, neither Mr. Wright nor the CRAs cite the specific provisions of the CCCRA, but Mr. Wright does state that the district court "dismissed the CCCRA [reinvestigation] claim, noting that the elements under the state law claim paralleled those under the federal statute." Aplt. Br. at 24 n.2. Because the parties treat the FCRA claims and CCCRA claims as essentially the same and regard the district court's opinion as disposing of all of Mr. Wright's FCRA and CCCRA claims, we address Mr. Wright's FCRA and CCCRA claims here.

## II. **DISCUSSION**

Mr. Wright appeals, contending the district court should not have granted summary judgment to the CRAs because he raised genuine issues of material fact about the accuracy of the tax lien information on the reports and the reasonableness of the CRAs' procedures in reporting and reinvestigating this information. We affirm the district court's determination that Mr. Wright could not establish the CRAs employed unreasonable procedures in reporting and reinvestigating the tax lien information.

### A. *Standard of Review*

"We review a district court's decision to grant summary judgment de novo, applying the same standard as the district court." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (quotations omitted). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012) (quotations omitted).

### B. *Reasonable Procedures under 15 U.S.C. § 1681e(b) and Colo. Rev. Stat. § 12-14.3-103.5*

Mr. Wright's first claim is that the CRAs failed to use reasonable procedures in reporting the tax lien information in the first instance. Based on the legal requirements of the FCRA and CCCRA, we conclude the district court properly granted summary judgment on this issue.

- 9 -

1. **Legal Background**

The FCRA and the CCCRA require CRAs to employ reasonable procedures in preparing credit reports.

When CRAs initially report information, 15 U.S.C. § 1681e(b) requires:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

Colo. Rev. Stat. § 12-14.3-103.5 similarly requires:

> Whenever a consumer reporting agency prepares a consumer report, the agency shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the consumer about whom the report relates . . . .

To prevail on a claim under these provisions, a plaintiff must "establish that: (1) [the CRA] failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report in question was, in fact, inaccurate; (3) [the plaintiff] suffered injury; and (4) [the CRA's] failure caused his injury." *Eller v. Trans Union, LLC*, 739 F.3d 467, 473 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 2158 (2014); *see also Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002). We resolve this appeal based on Mr. Wright's inability to prove the first element of his claim.

The FCRA does not define "reasonable procedures," and the Tenth Circuit has not yet addressed this term. Other circuits applying § 1681e(b) have recognized the "reasonableness of the procedures" is a fact-dependent inquiry, "and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Guimond*

*v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *see also Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991). But in cases where CRAs clearly employ reasonable procedures, the issue may be decided on summary judgment. *See Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (stating summary judgment may be appropriate under § 1681e(b) when "the reasonableness or unreasonableness of the procedures is beyond question").

Courts have held CRAs must look beyond information furnished to them when it is inconsistent with the CRAs' own records, contains a facial inaccuracy, or comes from an unreliable source. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 708-11 (3d Cir. 2010); *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51-53 (D.C. Cir. 1984); *Dennis v. BEH–1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). CRAs are not required to research further when "the cost of verifying the accuracy of the source" outweighs the "possible harm inaccurately reported information may cause the consumer." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994); *see also Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015).

2. **The CRAs Used Reasonable Procedures**

As noted above, the CRAs relied on LexisNexis to collect information from the Recorder's office. LexisNexis employs a collector to retrieve information from the Recorder's office and send it to the CRAs. LexisNexis certifies its collectors on document recognition, certifies them on the process and procedures for collecting public

record information, and audits them to assure understanding and compliance with collection requirements. LexisNexis and the CRAs check the information they collect for accuracy.

Mr. Wright contends summary judgment should not have been granted to the CRAs because he raised a genuine issue of material fact as to whether the CRAs followed reasonable procedures in reporting the tax lien under § 1681e(b). He asserts reasonable procedures would have required the CRAs to employ individuals trained in American tax law to examine the NFTL and determine whether it applied to him. He offers no authority to support this position.

The information LexisNexis collected from the Pitkin County Recorder's website and sent to the CRAs was not inaccurate on its face, inconsistent with information the CRAs already had on file, or obtained from a source that was known to be unreliable. *See Cortez*, 617 F.3d at 713; *Stewart*, 734 F.2d at 51-53; *Dennis*, 520 F.3d at 1069; *Cushman*, 115 F.3d at 224-26. The cases that have addressed reasonable procedures show the CRAs acted reasonably here.

In *Cortez*, a jury determined a CRA failed to follow reasonable procedures in erroneously reporting a consumer's name that appeared on the Treasury Department's Office of Foreign Assets Control List ("OFAC List"). 617 F.3d at 705. The district court denied the CRA's motion for judgment as a matter of law. *Id.* The Third Circuit affirmed, determining there was sufficient evidence for a jury to find the CRA's procedures were unreasonable. 617 F.3d at 710. The CRA's records showed the

consumer was born in 1944 and her middle name was "Jean." *Id.* at 710. The actual person on the OFAC List had the same first name as the consumer, but her middle name was "Quintero," her last name was spelled "Cortes," and she was born in 1971. *Id.* The court upheld the jury's verdict because these differences supported a determination that the CRA "did not exercise sufficient care" in carrying out its responsibilities under § 1681e(b). *Id.* Unlike the evidence in *Cortez*, Mr. Wright has provided no evidence to show the tax lien information taken from the Recorder's website was inconsistent with the information the CRAs had on file about him.

In *Dennis*, the Ninth Circuit reversed summary judgment for the CRA because the CRA reported an unlawful detainer judgment had been entered against the consumer. 520 F.3d at 1069. The court docket in the unlawful detainer action actually stated the parties had stipulated to dismissal of the case and that the case was dismissed without prejudice. *Id.* at 1068. Unlike the consumer in *Dennis*, Mr. Wright has failed to establish any inaccuracy that was apparent from the face of the Recorder's website. He has not shown the CRAs knew or should have known that the tax lien information provided to them was inaccurate. *See also Stewart*, 734 F.2d at 52 (holding a CRA was required to initially verify furnished information because it was inconsistent with the consumer's credit history).

The pertinent case law also shows that the costs to the CRAs of employing individuals trained in American tax law to examine every NFTL outweighs the potential of harm to consumers like Mr. Wright. *See Childress*, 790 F.3d at 747; *Henson*, 29 F.3d

at 285.  In *Childress*, the Seventh Circuit upheld a district court's summary judgment determination that it was reasonable under § 1681e(b) for a CRA to report a bankruptcy petition without later reporting the petition had been withdrawn.  790 F.3d at 747.  The court noted that bankruptcy courts are often unclear in reporting withdrawals and that it would be unreasonable to require CRAs to independently verify whether a bankruptcy petition had been dismissed or withdrawn because this would require "a live human being, with at least a little legal training, to review every bankruptcy dismissal and classify it as either voluntary or involuntary."  *Id.*

In *Henson*, the Seventh Circuit affirmed dismissal on the ground that it was reasonable under § 1681e(b) for a CRA to report a state court judgment even though the state court had erroneously noted a money judgment against the plaintiff on the Judgment Docket.  29 F.3d at 285.  The court held, "as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate."  *Id.*  To hold otherwise would require CRAs "to go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action" and "substantially increase the cost of their services."  *Id.*

The plaintiff-consumers in *Childress* and *Henson* argued for procedures similar to those Mr. Wright espouses—requiring CRAs to employ individuals trained in American tax law to examine every NFTL filed in a county recorder's office.  No court

- 14 -

has required a CRA to go this far to meet the reasonable procedures requirement of § 1681e(b).

The CRAs' reliance on LexisNexis to report the tax lien on Mr. Wright's credit report was reasonable. We affirm the district court's determination that the CRAs employed reasonable procedures under § 1681e(b) and Colo. Rev. Stat. § 12-14.3-103.5 in reporting Mr. Wright's tax lien.

### C. *Reasonable Reinvestigation under 15 U.S.C. § 1681i(a)(1)(A)*

Mr. Wright's second claim is that the CRAs failed to use reasonable procedures in reinvestigating the tax lien information after he disputed his credit report. Based on the FCRA's requirements for reinvestigation, we conclude the district court properly granted summary judgment on this issue.

### 1. **Legal Background**

15 U.S.C. § 1681i(a)(1)(A) requires the following from CRAs' reinvestigation of consumer disputes:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

Colo. Rev. Stat. § 12-14.3-106 similarly requires:

- 15 -

> If the completeness or accuracy of any item of information contained in the consumer's file is disputed by the consumer and the consumer notifies the consumer reporting agency directly of such dispute, the agency shall reinvestigate the item free of charge and record the current status of the disputed information on or before thirty business days after the date the agency receives notice conveyed by the consumer.

To prevail on a § 1681i(a) claim or its nearly identical CCCRA counterpart, plaintiffs must prove essentially the same elements as those for a § 1681e(b) claim— unreasonable procedures in reinvestigating a report, inaccuracy of the report, injury, and causation—in addition to proving they informed the CRA about the inaccuracy. *See Cushman*, 115 F.3d at 225; *Cortez*, 617 F.3d at 712-13. As with Mr. Wright's first claim, we resolve the reinvestigation appeal based on his inability to prove the first element of the claim.

Although § 1681i(a) does not define the term "reasonable reinvestigation," courts have consistently held a reasonable reinvestigation requires more than "making only a cursory investigation into the reliability of information that is reported to potential creditors." *Cortez*, 617 F.3d at 713. Thus, "[a] credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice." *Henson*, 29 F.3d at 286. "In short, when one goes from the § 1681e(b) investigation to the § 1681i(a) *re* investigation, the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly." *Cushman*, 115 F.3d at 225.

A reasonable reinvestigation, however, does not require CRAs to resolve legal disputes about the validity of the underlying debts they report. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) ("We agree that reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (holding a reasonable reinvestigation does not entail resolving "legal issue[s] that a credit agency . . . is neither qualified nor obligated to resolve under the FCRA").

2. **The CRAs' Reinvestigation Was Reasonable**

After Mr. Wright disputed the tax lien information, Trans Union sent Mr. Wright's dispute letter and documentation, which included the NFTL and the IRS's release of the NFTL, to Intelenet. Experian sent a description of Mr. Wright's dispute to LexisNexis. LexisNexis and Intelenet considered the information sent to them and reported to the CRAs that the lien was properly recorded against Mr. Wright and had been released but not withdrawn. The CRAs updated their credit reports to reflect that the lien had been released and provided summaries of their reinvestigations to Mr. Wright.

Mr. Wright contends that this reinvestigation was unreasonable. He argues (a) entries on the NFTL showed the tax lien did not apply to him, which would have been apparent to the CRAs if they had employed individuals trained in American tax law to examine the NFTL; (b) the CRAs should have contacted the IRS to inquire whether the tax lien applied to him; and (c) the CRAs should have determined whether the tax lien

- 17 -

applied to him. All three arguments fail. We therefore affirm the district court's

determination that the CRAs' reinvestigation under § 1681i(a) was reasonable.

a. *Entries on the Face of the NFTL*

Mr. Wright argues that entries on the NFTL—ATA's address, ATA's taxpayer

identification number, and information that the lien was imposed for employment taxes

—show it applied only to ATA. He contends the CRAs would have reached this

conclusion had they employed individuals trained in American tax law to examine the

NFTL. He provides no support to show this is so. The CRAs point to tax expert

evidence that the NFTL could and did apply to Mr. Wright. The CRAs also provide

authority that the IRS may impose a tax lien against a limited liability company and its

single member in certain circumstances.[4] Trans Union's expert testified that Mr. Wright's

being "named as a Taxpayer on the Wright Lien means that the IRS asserted a Federal

---

[4] The CRAs cite authority stating the IRS may impose tax liens against a member of a limited liability company if "the LLC and its sole member are a single taxpayer or entity." *Med. Practice Sols., LLC v. Comm'r*, 132 T.C. 125, 127 (2009); *see also Littriello v. United States*, 484 F.3d 372, 378 (6th Cir. 2007) (noting that because plaintiff's companies were disregarded entities, "he is . . . liable individually for the employment taxes due and owing from those businesses"). The CRAs also cite provisions from the IRS Manual stating the IRS can hold the owner of an LLC liable for employment taxes imposed prior to January 1, 2009. Aplt. App. at 420, 425 (IRS Manual §§ 5.1.21.3.1, 5.1.21.5.1(2)). The taxes at issue here were for the 2004 tax year. Thus, if the IRS understood Mr. Wright was the single member of ATA, and assuming all other necessary conditions were satisfied, it would have been possible for the IRS to impose a lien against Mr. Wright for ATA's failure to pay taxes.

- 18 -

Tax Lien interest against his personal assets for the underlying tax debt of Attorney's Title Insurance Agency of Aspen LLC." Aplt. App. at 334.[5]

Even if the IRS did not intend to impose a tax lien against Mr. Wright, the NFTL nonetheless reflects on its face that it did because the IRS placed his name on it. Mr. Wright has not shown that hiring tax experts at the CRAs to examine NFTLs on their face would have produced a different result here. Indeed, the only tax expert evidence in the record supports the CRAs.

b. *Contact the IRS*

Mr. Wright next contends a reasonable reinvestigation of his dispute would require the CRAs to contact the IRS. The only authority Mr. Wright cites is a district court case, later vacated, about a consumer who provided a release to the CRAs to contact the IRS after the consumer disputed the credit report. *Soghomonian v. United States*, 278 F. Supp. 2d 1151, 1158 (E.D. Cal. 2003), *vacated* in 2005 WL 1972594 (E.D. Cal. June 20, 2005). This case is inapposite because Mr. Wright provided no release to the CRAs.

Further, federal law appears to prohibit the IRS from providing the CRAs with Mr. Wright's tax information. *See* 26 U.S.C. § 6103; *Church of Scientology v. IRS*, 484 U.S. 9, 16 (1987) (holding the IRS could not release confidential information, even where

---

[5] In his Reply Brief, Mr. Wright states that he is not a member of ATA and that the NFTL is inaccurate in stating he is. The implication is that the NFTL could not apply to him and that the CRAs' authority stating the IRS can impose liens against limited liability companies and their single-member owners is inapposite. Because Mr. Wright did not state in his letters to the CRAs that he was not a member of ATA, he cannot contend the CRAs needed to investigate information they did not have.

identifying taxpayer information was redacted, because "[o]ne of the major purposes in revising § 6103 was to tighten the restrictions on the use of return information by entities other than [the IRS]").[6]

---

[6] In his opening brief, Mr. Wright cites to § 1681i(a)(5), which requires:

> If, after any reinvestigation . . . of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall—
>
>> (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
>>
>> (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

We decline to decide whether the IRS's apparent inability to provide the CRAs information requires the CRAs to delete the tax lien information under § 1681i(a)(5) for three reasons. First, Mr. Wright failed to cite to § 1681i(a)(5) or raise this argument in district court. *See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1141 (10th Cir. 2007) ("An issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling.").

Second, the district court did not address this argument, so we would potentially be reversing on an alternative ground not raised or ruled on in district court. The rule that an issue not raised to the district court is forfeited "is particularly apt when dealing with an appeal from a grant of summary judgment, because the material facts are not in dispute and the trial judge considers only opposing legal theories." *Tele–Commc'ns, Inc. v. Comm'r of Internal Revenue*, 104 F.3d 1229, 1232 (10th Cir. 1997). If this court were to consider new arguments on appeal to reverse the district court, we would "undermine[ ] important judicial values. In order to preserve the integrity of the appellate structure, we should not be considered a 'second-shot' forum, a forum where secondary, back-up theories may be mounted for the first time." *Id.* at 1233.

Third, although Mr. Wright cites to § 1681i(a)(5) in his opening brief and quotes its language, neither he nor the CRAs develop any argument based on this statute in their

Continued . . .

c. *Validity of the NFTL*

Mr. Wright argues the CRAs should have determined the validity of the NFTL. The FCRA and relevant case law do not impose such a duty on the CRAs. *See Carvalho*, 629 F.3d at 892; *DeAndrade*, 523 F.3d at 68.

The FCRA expects consumers to dispute the validity of a debt with the furnisher of the information or append a note to their credit report to show the claim is disputed. *See* 15 U.S.C. §§ 1681i(a)(6)(B)(iii), (iv);(b)-(c) (stating that, upon reinvestigation, CRAs must provide consumers two notices, one stating that a consumer may request any reasonably available contact information from the furnisher of the information and the other stating "that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information"); *Carvalho*, 629 F.3d at 892 (construing 15 U.S.C. § 1681i and determining "a consumer who disputes the legal validity of an obligation should do so directly at the furnisher level"). The CRAs informed Mr. Wright of these two avenues of relief, and Mr. Wright pursued neither.

In *Carvalho*, a consumer thought her insurer should have paid her medical bill. 629 F.3d at 882. When the medical bill appeared on her credit report, she requested it be removed. *Id.* The CRAs reinvestigated the bill, found it was still unpaid, and refused to remove it. *Id.* at 882-83. The Ninth Circuit upheld a district court's summary judgment determination that a reasonable reinvestigation would not have discovered the purported

briefing. Without a developed argument from Mr. Wright or a response from the CRAs, whose failure to respond is excusable given Mr. Wright's undeveloped argument, we decline to exercise our discretion to reach this issue.

- 21 -

inaccuracy. *Id.* at 892. The court said, "Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Id.* at 891.

In *DeAndrade*, the plaintiff-consumer had financed the purchase of windows for his home. 523 F.3d at 63. He later discovered the bank had mortgaged his home by, he claimed, forging his and his wife's signatures. *Id.* He refused to make payments on the mortgage. *Id.* at 64. The bank notified the CRAs of the unpaid mortgage, which the CRAs reported on the consumer's credit report. *Id.* The consumer then requested a reinvestigation. *Id.* The First Circuit, construing 15 U.S.C. § 1681i, upheld the district court's determination that the reinvestigation was reasonable because the bank produced documentation of the mortgage and the question of whether the consumer "was entitled to stop making those payments is a question for a court to resolve . . . not a job imposed upon consumer reporting agencies by the FCRA." *Id.* at 68.

Like the consumers in *Carvalho* and *DeAndrade*, Mr. Wright's argument would require the CRAs to do more than a reasonable reinvestigation requires. As part of their reinvestigation, the CRAs examined the NFTL and determined it applied to Mr. Wright because his name was listed. Mr. Wright insists the CRAs must go further and determine the validity of the tax lien. As the foregoing cases demonstrate, that question is a matter he should take up with the IRS.

We affirm the district court's determination that the CRAs' reinvestigation of Mr. Wright's dispute was reasonable under § 1681i(a) and Colo. Rev. Stat. § 12-14.3-106.

## III. CONCLUSION

For the foregoing reasons, we affirm.

*Gary A. Wright v. Experian Information Services, Inc. and Trans Union LLC*, 14-1371
**BACHARACH**, J., concurring in part and dissenting in part.

I agree with the majority's well-reasoned discussion in Parts I and II(A) and (B), but I respectfully disagree with Part II(C). In my view, we should reverse the award of summary judgment on the reinvestigation claim.

As the majority explains, Trans Union and Experian had a duty to conduct a reasonable reinvestigation after learning of Mr. Wright's dispute. The general rule is that the reasonableness of the reinvestigation entails an issue of fact, not of law. *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (stating that the reasonableness of an investigation under the Fair Credit Reporting Act is a factual question normally reserved for trial); *Seamans v. Temple Univ.*, 744 F.3d 853, 864-65 (3d Cir. 2014) (stating that the reasonableness of a consumer reporting agency's procedure is normally a question for trial). In my view, we should apply the general rule on the sufficiency of the reinvestigation.

When responding to the summary judgment motion, Mr. Wright presented evidence that he had supplied the notice of a tax lien to both Trans Union and Experian. In light of that evidence, a fact finder could legitimately infer that Trans Union and Experian should have consulted the actual notice rather than rely on second-hand accounts. If the agencies had consulted the actual notice, they would have seen this document (without the highlighting):

| Form 668 (Y)(c) | 4899 | Department of the Treasury - Internal Revenue Service |
| Rev. February 2004) | | **Notice of Federal Tax Lien** |

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #5 Lien Unit Phone: (800) 829-3903 | Serial Number 549008209 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer ATTORNEYS TITLE INSURANCE AGENCY OF WRIGHT GARY A MEMBER

Residence    715 W MAIN ST STE 305
             ASPEN, CO 81611-1659

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 941 | 03/31/2004 | 20-0132022 | 04/09/2007 | 05/09/2017 | 726.83 |

| Place of Filing | CLERK AND RECORDER PITKIN COUNTY ASPEN, CO 81611 | Total | $ 726.83 |
|---|---|---|---|

This notice was prepared and signed at _____ SEATTLE, WA _____, on this,

the __15th__ day of __May__, __2009__.

| Signature  R. A. Mitchell or MICHAEL W. COX | Title ACS (800) 829-3903 | 26-00-0008 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

-2-

On its face, the notice is ambiguous. The fact finder could interpret the notice as a lien against Mr. Wright's agency (a limited liability company), against Mr. Wright in his personal capacity, or against both the limited liability company and Mr. Wright. The name of Mr. Wright's agency is "Attorneys Title Insurance Agency of Aspen." The word "Aspen," however, does not appear in the notice. And Mr. Wright is listed only with the designation "member." Under state law, members of a limited liability company (like Attorneys Title Insurance Agency of Aspen) are not subject to personal liability for the company's debts. *See* Colo. Rev. Stat. Ann. § 7-80-705 (West 2015) ("Members . . . of limited liability companies are not liable under a judgment, decree, or order of a court, or in any other manner, for a debt, obligation, or liability of the limited liability company.").

Trans Union and Experian point out that they had few opportunities to obtain clarification. For example, Trans Union and Experian state that they could not obtain clarification from the creditor (the Internal Revenue Service). Appellees' Answering Br. at 40, 44. If that is true, Trans Union and Experian might have turned to Mr. and Mrs. Wright, who had insisted that the lien involved only the insurance agency. But Trans Union and Experian could reasonably reject the account of Mr. and Mrs. Wright because of their self-interest. Thus, Trans Union and Experian were left with only the ambiguous notice of a tax lien.

Trans Union and Experian argue that it would be "unnecessary and costly" to require consumer reporting agencies to review the actual notice of a tax lien. *Id.* at 18. Here, however, Mr. and Mrs. Wright sent the actual notice to both Trans Union and Experian. And both entities represent that they *did* review the actual notice. *Id.* at 12-13, 19, 36, 38. With that representation, the fact finder could justifiably infer that Trans Union and Experian should have recognized the ambiguity in the notice, regardless of what others said about the contents. *See, e.g.*, *id.* at 39, 43-44 (arguments by Trans Union and Experian that they could assess the dispute based on the notice of a tax lien).

The resulting question is whether a fact finder could fault Trans Union and Experian for refusing to delete reference to the personal lien after finding themselves unable to verify who the lien was against. To answer this question, we must turn to federal law, 15 U.S.C. § 1681i(a)(5)(A), which requires deletion from a personal credit report when a personal lien proves impossible to verify:

> If, after any reinvestigation . . . of any information disputed by a consumer, an item of the information is found to be . . . incomplete or cannot be verified, the consumer reporting agency shall—
>
> (i)    promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation . . . .

15 U.S.C. § 1681i(a)(5)(A) (2012).

The majority states that Mr. Wright waived reliance on § 1681i(a)(5) by failing to cite this provision in district court. For the sake of argument, let's

assume that the majority is correct about waiver. But "[w]aiver . . . binds only the party, not the court." *Planned Parenthood of Kan. and Mid-Mo. v. Moser*, 747 F.3d 814, 837 (10th Cir. 2014). Even if Mr. Wright waived reliance on § 1681i(a)(5), we would retain discretion to address the issue. *Id.* In my view, there are two strong reasons for us to consider § 1681i(a)(5) even if Mr. Wright had waived reliance on this provision in district court.

First, Trans Union and Experian "waived the waiver" by failing to argue on appeal that Mr. Wright had failed to preserve reliance on § 1681i(a)(5). *See United States v. Heckenliable*, 446 F.3d 1048, 1049 n.3 (10th Cir. 2006) (explaining that the government had "waived the waiver" by failing to argue that the defendant had forfeited his appeal point).

Second, Mr. Wright argued in district court that Trans Union and Experian had failed to verify the existence of a personal lien. Appellant's App., vol. 2, at 663. To evaluate this argument, we must decide whether the law required the defendants to verify the existence of a personal lien. *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) ("[A] court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." (quoting *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990))). For that decision, we must consider the applicable law, which appears in § 1681i(a)(5). Thus, we must consider § 1681i(a)(5) if we are to assess whether the reinvestigation was reasonable as a

matter of law. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) (holding that a party did not waive reliance on state law because "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law").

For both reasons, I would assess the defendants' argument on reinvestigation against the backdrop of the pertinent law: 15 U.S.C. § 1681i(a)(5).

Under this law, a fact finder could reasonably conclude that Trans Union and Experian were unable to verify from the notice that it included a lien against Mr. Wright. With this conclusion, the fact finder could reasonably determine that the reinvestigation should have led Trans Union and Experian to delete the personal lien from the credit reports. *See Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986) (stating that the consumer reporting agency should have deleted the reported information under § 1681i(a) if verification would have been possible only through an individual known to have past disagreements with the plaintiff).[1]

Notwithstanding the ambiguity in the notice, Experian said that LexisNexis had listed Mr. Wright as a "responsible taxpayer." Appellees' Answering Br. at 12. But a fact finder could reasonably question Experian's reliance on

---

[1] For reasons ably explained by the majority, a consumer reporting agency ordinarily will not need to verify a lien with the Internal Revenue Service. Here, however, the existence of a personal lien was based on guesswork about how to interpret the IRS notice.

LexisNexis' response. In responding to Experian's inquiry, LexisNexis identified where the county clerk had filed the lien and the lien release. Appellees' Suppl. App. at 161. But LexisNexis did not say whether it had reviewed the actual notice.

To Comply with FCRA, please respond within 5 working days.

Name: GARY A WRIGHT
Addr: 715 WEST MAIN STREET SUITE 201
ASPEN, CO 81611

Prev:

SSN/DOB: 193360922 / 1951
Spouse/SSN: 193360922 1951

SAME
☐ Name: GARY A WRIGHT
☐ Addr:
☐ Prev: 715 W MAIN ST APT 201
ASPEN CO 81611
☐ SSN/DOB:
☐ Spouse/SSN:

Consumer States: Consumer states inaccurate info. Provide complete ID/account info. (D) / NOT PERSNLY RSPONSBLE . FILD WITHDRWL FORM668 ON 5/15/9. CHK#61420 ON 5/8/9. RCVD REL. OF LIEN CONS. IS MBER EIN2001 32022

| | Subscriber Name | | Subscriber Code | Date Opened | | Present Status | | | High Credit | MOP Payment History 1-12 Months | Type Acct & MOP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Credit Limit/Amount | Terms | Date Last Payment | | Maximum Delinquency | | | Maximum Delinquency 14-25 Months | ECOA |
| | Type Loan | Balloon Payment/Date Due, Collateral, Sold To, Original Creditor | | | Account Condition/Payment Status | | Status Date/Closed | Historical Status |

Verified As Reported ☐

PITKIN COUNTY RECORDER 3032148
$726
Federal Tax Lien 05/27/09
BK PG SEQ NO: SQ559399 05/27/09

Consumer Claims ☐

Change Data As Shown ☐

PITKIN COUNTY RECORDER 3032148
$726
Internal Revenue Service FEDERAL LN REL BK PG SEQ NO:12/29/10 559399
BK PG SEQ NO: SQ559399 FEDERAL TAX LIEN BK PG SEQ NO:05/27/09

Delete Account ☐ Reason for change/comments
SATISFIED/RELEASED

Authorized Signature LexisNexis     Date 07/23/12     Phone (405) 302-6091

If LexisNexis, Experian, or Trans Union had looked at the actual notice (which Mr. Wright had sent), they would have seen that it was ambiguous. The district court recognized the ambiguity but mistakenly concluded that the ambiguity supported summary judgment for Trans Union and Experian. Appellant's App., vol. 4, at 1399-400. In doing so, the court reasoned that Trans

Union and Experian could have justifiably inferred that the notice of tax lien applied to Mr. Wright in his personal capacity. *Id.* In drawing this inference, the court misunderstood the test to be applied to Trans Union and Experian's reinvestigation. If the notice remained ambiguous after the reinvestigations, as the district court concluded, the existence of a personal lien would have been impossible to verify. Thus, under federal law, a fact finder could rationally conclude that Trans Union and Experian should have deleted the entry as a personal debt of Mr. Wright. *See* 15 U.S.C. § 1681i(a)(5) (2012).

As a result, I respectfully dissent from the majority's conclusion in Part II(C).