RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0234p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

AHMED HAMMOUD,

                 *Plaintiff-Appellant*,

    *v.*

EQUIFAX INFORMATION SERVICES, LLC,

                 *Defendant*,

EXPERIAN INFORMATION SOLUTIONS, INC.,

                 *Defendant-Appellee*.

> No. 21-2859

_____

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:19-cv-13262—Mark A. Goldsmith, District Judge.

Argued: May 5, 2022

Decided and Filed: November 4, 2022

Before: COLE, BUSH, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Youssef H. Hammoud, HAMMOUD LAW, P.C., Santa Ana, California, for Appellant. Christopher A. Hall, JONES DAY, Chicago, Illinois, for Appellee. **ON BRIEF:** Youssef H. Hammoud, HAMMOUD LAW, P.C., Santa Ana, California, David A. Chami, PRICE LAW GROUP, APC, Scottsdale, Arizona, for Appellant. James Joseph, JONES DAY, Detroit, Michigan, for Appellee.

     COLE, J., delivered the opinion of the court in which BUSH and NALBANDIAN, JJ., joined. NALBANDIAN, J. (pp. 9–14), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

COLE, Circuit Judge.  Mohamad and Ahmed Hammoud—father and son, respectively—filed Chapter 7 bankruptcy petitions just over a year apart using the same attorney.  Both petitions contained their similar names, identical address, and—mistakenly—Ahmed's social security number.  Although the attorney corrected the social security number on Mohamad's bankruptcy petition the day after it was filed, Experian Information Solutions, Inc. failed to catch the amendment and erroneously reported Mohamad's bankruptcy on Ahmed's credit report for nine years.

In 2019, Ahmed sued Experian and Equifax Information Services, Inc., alleging that each had violated § 1681e(b) of the Fair Credit Reporting Act by failing to "follow reasonable procedures to assure maximum possible accuracy" of his reported information.  15 U.S.C. § 1681e(b).  Equifax and Ahmed settled.  The remaining parties—Experian and Ahmed—cross-moved for summary judgment, and the district court granted Experian's motion.  We agree with the district court that Ahmed has standing to bring this action, but also agree that he cannot establish that Experian's procedures were unreasonable as a matter of law.  We therefore affirm.

## I.  BACKGROUND

Ahmed Hammoud filed a Chapter 7 bankruptcy petition through his attorney, Kurt Thornbladh, on September 28, 2009.  The petition listed: his name as "Ahmed M. Hammoud"; his address as 8465 Berwyn in Dearborn Heights, Michigan; and his social security number as ending in 7409.  The bankruptcy court discharged his bankruptcy on January 5, 2010.

Mohamad Hammoud—Ahmed's father—filed a joint bankruptcy petition with his wife, Sanaa M. Hammoud, on October 11, 2010.  Thornbladh also served as their counsel.  Mohamad's petition listed: his name as "Mohamad Hammoud," with an alternative name of "Ahmed Mohamad Hammoud"; his address as 8465 Berwyn in Dearborn Heights, Michigan; and his social security number as ending in 7409.  This social security number, however, was inaccurate; the last four digits of Mohamad's number are 4341.

The day after Thornbladh filed Mohamad's bankruptcy petition, he realized that he had included Ahmed's social security number rather than Mohamad's. So, Thornbladh filed a "Statement of Social Security Number" to correct the error on Mohamad's petition.

Despite the quick correction, the mistake had already been conveyed to Experian through its data collector, LexisNexis. Experian contracts with LexisNexis to obtain public records regarding consumer bankruptcies. Every day, LexisNexis supplies Experian with a summary of information contained in these records, and Experian then uses automated systems to match that information with a specific consumer file. For a record to be matched to a consumer, however, the social security number must be an exact match. Because of that, Experian's algorithms paired the mistaken social security number in Mohamad's bankruptcy petition with Ahmed's credit file. By the time Mohamad was granted a discharge in 2012, the court's order contained only Mohamad's corrected social security number—not his son's. Consequently, Experian updated Mohamad's credit file to reflect the discharge, but not Ahmed's. As a result, Experian reported an unresolved October 2010 bankruptcy on Ahmed's credit report for nine years.

Ahmed first learned that his father's bankruptcy petition was linked to his credit file in 2015 or 2016. In June 2016, Thornbladh prepared a letter on Ahmed's behalf to alert Experian of the error and request a correction. But due to a miscommunication between Ahmed and Thornbladh, the letter was never sent, and Experian was not notified of the inaccuracy.

Nearly three years later, Ahmed was in the process of completing a loan application to refinance his home. As part of the application, he again obtained his credit report in May 2019 and noticed that Experian had erroneously reported two bankruptcies on his credit file. His September 2019 report also showed that two creditors—Advantage Credit Incorporated and SettlementOne/Mortgage Center—had inquired about his credit history, and that Experian had shared information with them. Rather than complete the refinancing process, Ahmed withdrew his application because his loan officer informed him that he would be unable to secure an automated loan approval due to the undischarged bankruptcy listed on his credit report. Ahmed also decided against pursuing a manual underwriting process because it would have resulted in additional documentation, fees, and delays.

On August 13, 2019, Ahmed sent a letter to Experian disputing the October 2010 bankruptcy recorded on his credit report and demanding a sum in settlement. Experian removed Mohamad's bankruptcy filing from Ahmed's credit history on August 28, 2019.

Ahmed sued Experian and Equifax in November 2019. He alleged that both had violated § 1681e(b) of the Fair Credit Reporting Act by failing to follow "reasonable procedures to assure maximum possible accuracy" of Ahmed's credit history. *See* 15 U.S.C. § 1681e(b). Ahmed and Equifax settled.[1] Experian, however, moved to dismiss the claim for lack of subject matter jurisdiction, and then moved for summary judgment two weeks later. Ahmed cross-moved for summary judgment. Ultimately, the district court denied Experian's motion to dismiss, denied Ahmed's motion for summary judgment, and granted Experian's motion for summary judgment. *Hammoud v. Experian Info. Sols., Inc.*, No. 19-13262, 2021 WL 5106366, at *14 (E.D. Mich. July 23, 2021). Ahmed appealed.

## II. ANALYSIS

Before reaching the merits, we must assess whether Ahmed has Article III standing. We review a district court's standing determination de novo. *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728–29 (6th Cir. 2009).

To satisfy Article III's requirements, Ahmed must show: (1) that he "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (2) "the injury was likely caused by the defendant"; and (3) the injury "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The evidence required to sustain these elements corresponds "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At trial, for example, controverted facts must be "supported adequately by the evidence[.]" *Id.* But at summary judgment, it is enough that a plaintiff has "set forth by affidavit or other evidence specific facts" supporting each element. *Id.* (internal quotation marks omitted); *see also McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016).

---

[1]Due to the settlement, Experian is not a party in this appeal.

At this stage of the litigation, Ahmed has satisfied each element of standing.  As to the first and third elements, the Supreme Court clarified just last term that disclosing inaccurate information in a credit report to a third party constitutes a redressable injury sufficient to confer Article III standing.  *See TransUnion*, 141 S. Ct. at 2208–09.  Viewing the facts in the light most favorable to Ahmed—as we must on summary judgment, *see McKay*, 823 F.3d at 866–67—he has sufficiently demonstrated a cognizable injury.  The parties agree that the inaccuracy on his credit report was published to a third party. (*See, e.g.*, Reply Br. at 17; Recording of Oral Arg. at 17:01–17:16 (counsel for Experian conceding that record of the inaccurate information was published to a mortgage company).)  And information in the record supports the same.  (*See* Mortgage Center Notes, R. 50-26, PageID 723 (loan officer noting Ahmed's credit report shows "two chapter 7 [bankruptcies] within 8 years").)  Accordingly, elements one and three are met.

The more difficult question concerns the second element of standing—whether Ahmed put forth evidence at summary judgment to demonstrate Experian caused his injury.  Although Experian concedes both SettlementOne/Mortgage Center and Advantage Credit Incorporated accessed Ahmed's credit information, it claims the contents of a consumer report can vary, so it is possible that another credit reporting agency—Equifax, for example—could have been responsible for the disclosure.  Experian asks us to construe this uncertainty against Ahmed and conclude he failed to carry his burden on standing.  But doing so would contravene *Lujan*'s command that the "evidence required" to support standing changes throughout the course of litigation.  *See* 504 U.S. at 561.  Again, at the summary judgment stage, we must "consider the evidence in the light most favorable" to Ahmed and "draw all reasonable inferences in [his] favor"—even as to a subject-matter-jurisdictional inquiry such as standing.  *See McKay*, 823 F.3d at 866–67; *see also Lujan*, 504 U.S. at 561.

Viewing the facts in the light most favorable to Ahmed, his cognizable injury was fairly traceable to Experian's actions.  The record reveals SettlementOne/Mortgage Center knew Ahmed's credit report showed "two chapter 7 [bankruptcies] within 8 years," (Mortgage Center Notes, R. 50-26, PageID 723), and we know Experian furnished a consumer report to SettlementOne/Mortgage Center around that time.  And we also know the spurious bankruptcy was not removed from Ahmed's file until after SettlementOne/Mortgage Center made the

inquiry.  It makes sense, then, that Experian's counsel conceded at oral argument that Experian might have disclosed the bankruptcy to SettlementOne/Mortgage Center after all.  (*See* Recording of Oral Arg. at 20:45–20:54 ("Experian will concede it had both bankruptcies on file, SettlementOne made an inquiry, it might have disclosed this information to SettlementOne, but it might not have.").)  Even though a different result might have ensued on this evidence at trial, *see TransUnion*, 141 S. Ct. at 2212, we believe that Ahmed at least survived Experian's jurisdictional objection at summary judgment.  *See Losch v. Nationstar Mortgage LLC*, 995 F.3d 937, 943 (11th Cir. 2021).

With standing settled, we turn to the merits of Ahmed's claim.  To establish liability under § 1681e(b), Ahmed must show: (1) Experian reported inaccurate information about him; (2) Experian either negligently or willfully failed to follow reasonable procedures to ensure maximum possible accuracy of his information; (3) he was injured; and (4) Experian was the proximate cause of his injury.  *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 941 (6th Cir. 2020) (citing *Nelski v. TransUnion LLC*, 86 F. App'x 840, 844 (6th Cir. 2004)).  The district court granted summary judgment to Experian after it concluded that Ahmed was unable to establish that Experian's credit reporting procedures were unreasonable as a matter of law. *Hammoud*, 2021 WL 5106366, at *9.  Because Ahmed's inability to establish unreasonableness was dispositive of his claim, the district court did not consider any of the other elements.  *Id.*  We review a grant of summary judgment de novo.  *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020).

We have yet to consider what makes a credit reporting agency's verification procedure "reasonable" under § 1681e(b).  Some circuits have observed that whether a procedure is reasonable is often a "fact-dependent inquiry" reserved for a jury.  *See, e.g.*, *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015).  Others, however, have concluded that a credit reporting agency's procedures are reasonable as a matter of law when they rely on information obtained from reputable sources.  *See, e.g.*, *id.* at 1240–41; *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004).  As other courts have consistently maintained, it would be unreasonable to "require a live human being, with at least a little legal training, to review every bankruptcy dismissal and classify it" because of the "enormous burden" credit reporting

agencies would incur. *See, e.g.*, *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015). The calculus changes, however, once the consumer raises concerns that their information may be inaccurate. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994); *see also Losch*, 995 F.3d at 945. At that point, the investigative burden on the credit reporting agencies decreases because, "once a claimed inaccuracy is pinpointed" by the consumer, the agency "incurs only the cost of reinvestigating that one piece of disputed information." *Losch*, 995 F.3d at 945 (quoting *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997)).

Applying those principles here, Ahmed cannot establish that Experian's procedures were unreasonable as a matter of law. *Id.* at 945. Ahmed presents two main critiques of Experian's processes. First, he claims that Experian's procedures were unreasonable because Experian "blindly relie[d]" upon summary data from LexisNexis, rather than evaluating court documents itself. (Appellant Br. 25–37.) And second, Ahmed argues that Experian's failure to implement a procedure to update or verify the status of a bankruptcy proceeding is unreasonable. But Ahmed provides little authority to support either of those propositions, nor can he.

A credit reporting agency's reliance on information gathered by outside entities is reasonable so long as the information is not "obtained from a source that was known to be unreliable" and is "not inaccurate on its face" or otherwise "inconsistent with the information the [credit reporting agencies] already had on file[.]" *Wright*, 805 F.3d at 1240 (citations omitted). LexisNexis has long been thought to provide credit reporting companies with accurate, reliable information. *See, e.g.*, *id.* at 1241; *accord Childress*, 790 F.3d at 747. And even then, Experian employs several safeguards to ensure the information's veracity, such as conducting periodic audits to confirm the accuracy of LexisNexis's records. *See Hammoud*, 2021 WL 5106366, at *11 (citing Methvin Dep., R. 50-2, PageID 482, 487). Given those facts, we cannot agree with Ahmed that Experian's reliance on LexisNexis failed to satisfy § 1681e(b).

That brings us to Ahmed's second point—that Experian was required to implement additional procedures for collecting and verifying corrected information from bankruptcy proceedings. Ahmed claims that such procedures could have prevented the apparent dissemination of the erroneous bankruptcy report in this case. For instance, he notes, the docket entry listing the "Statement of Social Security Number" was publicly viewable and should have

put Experian on notice of a change or correction. But the content of that "statement" has never been made publicly available and was thus hidden from Experian's (and LexisNexis's) view. As the district court observed, recognizing that the social security number listed in Mohamad's bankruptcy petition was erroneous "would have required a person with at least some legal training to manually review the bankruptcy docket," and even then, it would have required additional investigation to determine what relevance the updated statement had to Ahmed's credit report. *Hammoud*, 2021 WL 5106366, at \*12. Section 1681e(b) does not require credit reporting agencies to investigate information to that degree, unless and until the consumer has alerted it to an inaccuracy. *See, e.g.*, *Losch*, 995 F.3d at 945; *Wright*, 805 F.3d at 1240; *Childress*, 790 F.3d at 747; *Henson*, 29 F.3d at 285.

Given the sheer amount of data maintained by these companies, we know that consumers are "in a better position . . . to detect errors" in their credit reports and inquire about a fix. *Henson*, 29 F.3d at 285. And this case proves that point. Once Ahmed notified Experian of the error on his credit report, Experian quickly fulfilled its obligation "to investigate that single, alleged error" and correct it. *Losch*, 995 F.3d at 945. Ahmed sent his letter on August 13, 2019. Experian removed Mohamad's bankruptcy from Ahmed's credit report on August 28, 2019. Experian's expeditious fix further shows that it employed reasonable procedures to ensure the accuracy of Ahmed's credit report. *See* 15 U.S.C. § 1681e(b). Experian's processes strike the right balance between ensuring accuracy and avoiding "an enormous burden" on consumer credit reporting agencies. *See Childress*, 790 F.3d at 747. For these reasons, Ahmed cannot show that Experian's procedures were unreasonable as a matter of law, and his claim under § 1681e(b) fails.

## III. CONCLUSION

We affirm the district court's grant of summary judgment to Experian.

———————————

**CONCURRENCE**

———————————

NALBANDIAN, Circuit Judge, concurring.   The elements of standing are familiar. A plaintiff must show that he "suffered an injury" that is fairly traceable to the defendant and that "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).   We all agree that the first and third elements of the standing test—injury and redressability—pose no problem here.   Rather, the standing issue comes down to traceability: Was Hammoud's injury fairly traceable to Experian?   Again, we all agree that the answer is yes. I write separately to tease out two oddities of our traceability inquiry and to elaborate on why Experian's standing argument fails.

## I.  Traceability and Causation

To satisfy the traceability requirement, a plaintiff must show that his "injury was likely caused by the defendant . . . ." *TransUnion*, 141 S. Ct. at 2203.   This standard brings us to our first oddity.   Traceability, perhaps more than any other standing element, resembles a merits question.   This is because the "fairly traceable" element sounds in tort causation.   But tort causation itself has two components, cause in fact and proximate cause, neither of which, as I will explain, fully encapsulates what "fairly traceable" means for purposes of Article III standing.

Sometimes courts, including the Supreme Court, use cause-in-fact terminology when analyzing traceability. *See Duke Power Co. v. Carolina Env't Study Grp., Inc*., 438 U.S. 59, 77–78 (1978) (explaining that the plaintiffs had satisfied the traceability requirement under Article III standing doctrine because the plaintiffs' injuries "would not have occurred *but for* the" conduct at issue (emphasis added)); *Allen v. Wright*, 468 U.S. 737, 757–58 (1984) (explaining that Article III standing existed "*only if*" the defendant's conduct had caused the plaintiffs' injuries (emphasis added)).   But other times courts treat traceability as akin to proximate cause. *See Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020) ("[T]here are cases when a plaintiff will fail to meet the traceability standard, such as when an injury is 'so

completely due to the plaintiff's own fault as to break the causal chain.'" (internal alteration and citation omitted)); *Allen*, 468 U.S. at 757 (deciding that an injury was not fairly traceable to the defendant's conduct because "the line of causation . . . [was] attenuated at best"); *see also* Luke Meier, *Using Tort Law to Understand the Causation Prong of Standing*, 80 Fordham L. Rev. 1241, 1245, 1282 (2011) (arguing that "while the *terminology* often used by the Supreme Court in discussing the causation prong of standing suggests a cause in fact analysis, the actual analysis employed by the Court" is "probably . . . more consistent with" proximate cause (emphasis in original)).

In any event, whatever the causation standard used, we know that a plaintiff's Article III standing to bring suit is distinct and separate from the merits. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute . . . ."); *see also Davis v. United States*, 564 U.S. 229, 249 n.10 (2011). And although traceability relates to tort causation, "[t]he standard for establishing traceability for standing purposes is *less demanding* than the standard for proving tort causation." *Buchholz*, 946 F.3d at 866 (emphasis in original).

In practice, this less demanding standard means that a plaintiff need only show by a "substantial likelihood" that the defendant caused his injury to satisfy standing's traceability element. *Duke Power Co.*, 438 U.S. at 75 n.20; Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.5 n.14 (3d ed. 2022) ("A cause-and-effect relationship need not be proved with absolute certainty; a substantial likelihood is enough.").[1] Though it may not lend itself to precise mathematical quantification, as far as I can tell, "substantial likelihood," at least in the context of traceability, must mean something less than a 50% chance but more than an

---

[1]The Supreme Court has several times employed "substantial likelihood" as the standard for traceability. *See Warth*, 422 U.S. at 504 ("Petitioners must allege facts from which it reasonably could be inferred that, absent the respondents' [conduct], there is a substantial probability that they would [not have experienced the harm]."); *Duke Power Co.*, 438 U.S. at 79 (explaining that a plaintiff need not demonstrate more than a "substantial likelihood that the judicial relief requested will prevent or redress" an injury in fact); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977) (characterizing the traceability determination as a "substantial probability test" (internal citation omitted)). I also note that, in *TransUnion*, the Court employed language akin to the "substantial likelihood" standard when examining whether the plaintiffs' alleged future injury was "too speculative to support Article III standing." *TransUnion*, 141 S. Ct. at 2212 (finding the plaintiffs did not demonstrate a "sufficient likelihood" of future harm). This suggests that the "substantial likelihood" standard also has some role to play in the concrete injury inquiry. *See id.*

insignificant chance.[2]   Any other definition strains against the idea that traceability is less demanding than causation on the merits.

## II.  Traceability at the Summary Judgment Stage

That said, this "substantial likelihood" analysis is a strange exercise, especially on summary judgment.  And this brings me to traceability's second oddity.  Traceability, perhaps more than other standing elements, is hard to square with our summary-judgment standard.  The elements of standing, after all, are not mere pleading requirements.  They are an indispensable part of the plaintiff's case that must be supported "with the [same] manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see, e.g. Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543 (6th Cir. 2021) (explaining that at the pleading stage "*Twombly*'s plausibility test appl[ies] to a motion to dismiss on standing grounds").  This means that we must layer summary judgment's normal requirements onto standing.  But, as noted above, we differentiate traceability from causation on the merits by requiring only a "substantial likelihood" of causation.  That leaves us with this: For a plaintiff to survive a standing challenge on summary judgment, he must demonstrate by a preponderance of the evidence that there is a substantial likelihood that a defendant caused his injury in fact (or at least that there are material fact disputes on that question).  *See Pineda v. Hamilton Cnty.*, 977 F.3d 483, 491 (6th Cir. 2020) ("Critically, to survive a summary-judgment motion, a plaintiff subject to a preponderance-of-the-evidence burden must present enough evidence to allow a reasonable juror to conclude that the [plaintiff's]

---

[2]The Supreme Court never defines "substantial likelihood." And I admit that the term is a bit nebulous. For one, "[i]t is not clear how a 'substantial probability' requirement compares to the 'preponderance of the evidence standard.'" Meier, *supra*, at 1257 n.85. For another, standing is an "assessment[] of probability . . . . [b]ut it is unclear where on the probability continuum it is sufficiently certain that a court should grant standing." Erwin Chemerinsky, *Constitutional Law: Principles and Policies* 88 (6th ed. 2019). Although the term appears in other legal contexts outside Article III standing, the definitions don't shed much light on its meaning. *See, e.g.*, *United States v. Loughner*, 672 F.3d 731, 769–70 (9th Cir. 2012) (affirming a district court's conclusion that a substantial probability means "any probability worth taking seriously" and does not necessarily mean "more likely than not") (internal quotation marks omitted)). And definitions sometimes conflict. *Compare United States v. Brown*, 352 F. Supp. 3d 589, 595 (E.D. Va. 2018) (defining the term as being "higher than th[e] burden" of the preponderance of the evidence standard in the statutory context of 18 U.S.C. § 4241), *with In re "Agent Orange" Prod. Liab. Litig.*, 100 F.R.D. 718, 726 (E.D.N.Y. 1983) (explaining that "substantial probability . . . is less than a preponderance but more than a mere possibility").

position *more likely than not* is true." (emphasis and alteration in original) (internal citation and quotation marks omitted)).

It's a peculiar math equation. At summary judgment, we ask whether a reasonable jury could find that it's more likely than not (greater than a 50% chance) that there's a substantial likelihood (less than a 50% chance but more than an insignificant chance) that the defendant caused the plaintiff's injury. The head-scratching nature of this equation lends itself to two more observations.

First, in my view, the "substantial likelihood" analysis seems to make the most sense at the pleading stage of the case. This is all the more true because standing is a threshold jurisdictional issue that serves a gatekeeping function before the merits. *See Warth*, 422 U.S. at 498 (explaining that standing "is the *threshold question* in every federal case, determining the power of the court to entertain the suit" (emphasis added)); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 n.8 (1986) ("The rules of standing . . . are threshold determinants of the propriety of judicial intervention." (quoting *Warth*, 422 U.S. at 517–18)); *Byrd v. United States*, 138 S. Ct. 1518, 1531 (2018) ("Article III standing . . . is jurisdictional and must be assessed before reaching the merits.").[3]

Second, standing's traceability analysis appears better suited for attenuated causation questions, *see, e.g.*, *Allen*, 468 U.S. at 752, than for questions about whether the plaintiff sued the right defendant in the first place (like this one). The latter is better suited for the merits. And consider the reality that, by the time a case reaches summary judgment, the plaintiff will have to show that there are disputed material facts, which, if believed, would lead to his victory— including merits causation. If the plaintiff can't survive summary judgment on traceability,

---

[3]Some scholars argue that we should treat standing like other 12(b)(1) jurisdictional-fact challenges and resolve the issue as a preliminary matter. *See e.g.,* Martin H. Redish & Sopan Joshi, *Litigating Article III Standing: A Proposed Solution to the Serious (But Unrecognized) Separation of Powers Problem*, 162 U. Pa. L. Rev. 1373, 1378, 1398-99 (2014).

surely he can't survive summary judgment on merits causation. And why would a defendant want to win a case on standing (without prejudice) rather than on the merits (with prejudice)?**4**

This question brings us to Experian's standing challenge. At summary judgment, Experian urged that Hammoud must show traceability "by affidavit or other evidence [with] specific facts." (Appellee Br., p. 32). And it contended he failed to do so by coming up short of "any evidence that a reasonable juror could use to conclude that Experian ever made any third-party disclosures containing his father's bankruptcy information." (Appellee Br., p. 29). But this argument fails to grasp the distinction between standing and merits analysis. And in so doing, Experian makes the mistake of treating Hammoud's burden for showing traceability as if it were identical to his burden for showing causation on the merits. Experian would effectively compel Hammoud to produce direct evidence of causation (i.e., a copy of the credit report that Experian sent, with the bankruptcy information spelled out on the page or testimony from creditors that this specific information was the reason for any adverse credit action taken). Such a showing would force Hammoud to show it's more likely than not (greater than a 50% chance) that Experian, as opposed to Equifax, provided the faulty credit information. This position overstates Hammoud's burden because traceability, properly understood, only requires Hammoud to show there's a "substantial likelihood" (greater than insignificant chance but less than 50% chance) that Equifax caused his injury.

In the end, I agree Hammoud produced enough evidence to meet this traceability standard. Experian admits that the erroneous bankruptcy information was in Hammoud's credit file. Experian concedes that it issued credit reports (which customarily include such information) to two creditors. And one of the creditors prepared a full credit report, which included the erroneous bankruptcy information and resulted in adverse credit action. *Hammoud v. Experian Info. Sols., Inc.*, No. 19-13262, 2021 WL 5106366, at *7 (E.D. Mich. July 23, 2021). These are specific facts that, when taken in the light most favorable to Hammoud, with all reasonable inferences made in his favor, show a "substantial likelihood" that Experian caused

---

**4**To be sure, the Supreme Court in *TransUnion* resolved a standing question after a trial on the merits. *TransUnion*, 141 S. Ct. at 2202. But the Court's decision turned on whether certain plaintiffs suffered concrete injuries, not on whether the alleged injury was fairly traceable to the conduct of the defendant. *Id.* at 2203.

Hammoud's injury in fact.  Put another way, Hammoud has shown there's a 50-50 chance that Experian, rather than Equifax or another credit reporting agency, released his credit report. Although that 50-50 causation showing would fall short in a merits analysis, it's enough to establish causation in a standing analysis.  So Experian's challenge to Hammoud's standing, particularly on traceability, fails.

### III.  Conclusion

For these reasons, I concur in the majority opinion.